866 P.2d 193

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Joan BOWMAN, Defendant–Appellant.**

No. 20311.

Court of Appeals of Idaho.

Dec. 17, 1993.

Petition for Review Denied Feb. 3, 1994.

Rigby, Thatcher, Andrus, Rigby & Kam, Rexburg, for defendant-appellant. Gregory W. Moeller, argued.

Larry EchoHawk, Atty. Gen., Douglas A. Werth, Deputy Atty. Gen., Boise, argued, for plaintiff-respondent.

PERRY, Judge.

Joan Bowman was found guilty by a jury of the misdemeanor offenses of trespass, I.C. § 18-7008(8); resisting, delaying or obstructing a public officer, I.C. § 18-705; and battery upon a peace officer, I.C. §§ 18-903, -915. Following the guilty verdicts, the magistrate granted Bowman's motion for judgment of acquittal as to the trespass charge, but denied the motion as to the other charges. Bowman appealed to the district court, which affirmed the guilty verdicts as to the resisting, delaying or obstructing a police officer and battery charges. The district court also reinstated the guilty verdict as to the trespass charge. Bowman appeals from the district court's order. For the reasons stated below, the magistrate's decision is affirmed in part and reversed in part.

## FACTS AND PROCEDURE

The facts of this case were vehemently disputed at trial. It is, however, undisputed that on May 27, 1991, Joan Bowman arranged to meet her sister, Susan Anderson, at the Holiday Theater in Rexburg. Anderson arrived before Bowman and feared there may have been some confusion regarding which theater was to be the meeting point. Therefore, after purchasing a ticket at the Holiday, Anderson left the theater and went to the nearby Paramount Theater to look for her sister. While waiting at the Paramount, Anderson purchased a bag of popcorn. Anderson, carrying the popcorn, returned to the Holiday complex and eventually found Bowman waiting in another auditorium. The two passed through the lobby to enter another theater within the Holiday complex. Prior to entering the theater to view the movie they had intended, Anderson was approached by the manager, Rudy Ballard. Ballard informed the women that the popcorn would have to be discarded before they entered the theater. At this point, the two versions of the incident diverge. According to Bowman, Anderson then told Ballard that she had just purchased the popcorn, did not wish to see it go to waste and offered to leave it in the foyer. Ballard, however, demanded the popcorn be thrown away. Anderson refused to discard it and informed Ballard that she was taking the popcorn into the theater, but would set it on the floor and not eat any of it. According to Bowman, Ballard never requested that the women leave the theater.

According to the state's witnesses, however, once Ballard informed the women they would not be able to take the popcorn into the theater, they became disorderly. Ballard asked the women to leave the theater and offered to refund the money for their tickets. The two ignored him and went into the theater to watch the movie.

Both parties agree that the police were summoned, and initial contact with the women was made by Officer Egbert. Beyond that, however, the two versions again differ greatly. According to Bowman, Officer Egbert requested that the women speak with him in the lobby regarding the matter. Bow-

man says she informed the officer that she would be happy to talk to him when the movie ended. When he persisted, she told him that he did not have a warrant for her arrest and, therefore, she did not feel she needed to talk with him until after the movie was over. Officer Egbert left and returned later with three other officers. The officers approached the women, who were quietly watching the movie. Making no attempt to speak with the women, the officers pulled the women from their seats and removed them from the theater, placing them under arrest.

According to the prosecution, Officer Egbert was accompanied on his initial contact with the women by Ballard, who asked the women again to leave, in the officer's presence, telling them they would be charged with trespassing if they didn't leave. After Officer Egbert asked the women to step into the lobby to discuss the situation, they became obnoxious and boisterous. Officer Egbert informed them that they had been asked to leave and if they refused to comply, he would be forced to arrest them for trespassing. Both Bowman and Anderson said they were not leaving the theater. After Officer Egbert summoned additional assistance, he and three other officers approached the women, again informing them that if they didn't leave, they would be arrested. After advising the women that they were under arrest, Officer Egbert reached down and touched Bowman's wrist area, at which time she "exploded" and began yelling, kicking and fighting with the officers. During the struggle in the theater, Bowman kicked, punched and bit Officer Egbert. On the way to the patrol car, Bowman punched Officer Egbert again and spit in his face. At the police station, Bowman was abusive and combative, refusing to cooperate with the officers and again spit in Officer Egbert's face.

The case was tried before a jury. Following presentation of the state's case, Bowman moved for a judgment of acquittal on all three charges. The magistrate reserved ruling on this motion. The jury found Bowman guilty of trespass, I.C. § 18–7008(8); resisting, delaying and obstructing a public officer, I.C. § 18–705; and battery upon a peace officer, I.C. §§ 18–903, –915. Following the

verdicts, the magistrate issued a memorandum decision granting the motion for judgment of acquittal as to the trespass charge, but otherwise denying the motion for judgment of acquittal on the remaining two charges.

Bowman appealed to the district court, which reversed the magistrate's order vacating the trespass verdict. The district court affirmed the guilty verdicts on the obstructing and battery charges, and affirmed the magistrate on all other issues.

Bowman now appeals, citing numerous errors in the district court's decision. Bowman claims the magistrate erred in denying her pre-trial motion either to suppress evidence or to dismiss the charges on the grounds that the arrest was made illegally and all evidence obtained therefrom was tainted. She also claims the magistrate erred when it failed to dismiss the charges against her because the arrest constituted an unreasonable seizure of her person. Bowman further alleges as error the magistrate's denial of her motion for judgment of acquittal, the refusal to excuse three prospective jurors who were members of the prosecuting attorney's religious congregation, the refusal to give a proposed jury instruction, the failure to correctly instruct the jury on the law of arrest and the denial of her motion for a new trial. We will address the issues as they occurred chronologically during the proceedings below.

## ANALYSIS

■ We first note that on review of a decision of the district court rendered in its appellate capacity, we examine the record of the trial court independently of, but with due regard for, the district court's intermediate appellate decision. *Waggoner v. State,* 121 Idaho 758, 760, 828 P.2d 321, 323 (Ct.App. 1991); *Harney v. Weatherby,* 116 Idaho 904, 906, 781 P.2d 241, 243 (Ct.App.1989).

### A. DENIAL OF THE MOTION TO SUPPRESS OR DISMISS.

■ The first two issues Bowman raises relate to the legality of her arrest. Bowman claims that her pre-trial motion to suppress evidence or to dismiss the charges should

have been granted because the arrest violated Idaho statutes. As a second issue, Bowman claims that all the evidence against her should have been suppressed because it was the result of an "unreasonable seizure" of her person, in violation of the United States and Idaho Constitutions. Bowman did not, however, raise the second issue in either her pretrial suppression motion or during the trial. It is well-settled that issues not raised below will not be considered for the first time on appeal. *State v. Russell,* 122 Idaho 488, 490, 835 P.2d 1299, 1301 (1992). Even issues involving the constitution are generally not considered on appeal unless they are properly raised below. *George W. Watkins Family v. Messenger,* 118 Idaho 537, 541, 797 P.2d 1385, 1389 (1990); *Sullivan v. Sullivan,* 102 Idaho 737, 739 n. 5, 639 P.2d 435, 437 n. 5 (1981). Therefore, we do not consider Bowman's second argument regarding an improper "seizure" of her person.

Prior to trial, the magistrate denied Bowman's motion to suppress or to dismiss based on her arrest. In her motion, Bowman claimed that the arrest did not comport with I.C. §§ 19–603 and 19–608 and was therefore illegal. She also sought to have all the evidence following her arrest suppressed as "fruits of the poisonous tree," including the evidence upon which the battery and obstructing charges were based.

Idaho Code § 19–603 states:

A peace officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person:

1. For a public offense committed or attempted in his presence . . . .

■ A "public offense" includes misdemeanors. *See Burks v. United States,* 287 F.2d 117, 122 (9th Cir.1961); *People v. Sjosten,* 262 Cal.App.2d 539, 68 Cal.Rptr. 832, 835 (Cal.Ct.App.1968). *See also* BLACK'S LAW DICTIONARY 370 and 1230 (6th ed. 1990). If the misdemeanor is not committed in the officer's presence, however, the officer must obtain a warrant before making the arrest. *See* 2 WILLIAM E. RINGEL, SEARCHES & SEIZURES, ARRESTS AND CONFES-

SIONS § 23.6(d) (1993); 5 AM.JUR.2D *Arrest* § 30 (1962).

Idaho Code § 19–608 states:

The person making the arrest must inform the person to be arrested of the intention to arrest him, of the cause of the arrest, and the authority to make it, except when the person to be arrested is actually engaged in the commission of, or an attempt to commit, an offense, or is pursued immediately after its commission, or after an escape.

■ As to both of these statutes, Bowman argues that no offense was committed in the presence of the officers, and, therefore, she simply could not be arrested. Our review of decisions regarding motions to suppress is bifurcated. We defer to the lower court's findings of fact unless they are clearly erroneous. *State v. Weber,* 116 Idaho 449, 452, 776 P.2d 458, 461 (1989); *State v. Heinen,* 114 Idaho 656, 658, 759 P.2d 947, 949 (Ct.App.1988). We do, however, exercise free review over the lower court's determination as to whether constitutional, or as in this case, statutory, requirements have been satisfied in light of the facts found. *Id.* Likewise, when reviewing the granting or denial of a motion to dismiss in a criminal case, we decide whether the lower court erred as a matter of law. *State v. Swenson,* 119 Idaho 706, 708, 809 P.2d 1185, 1187 (Ct.App.1991).

■ In this case, the magistrate did not make explicit findings of fact on the record when it denied the motion to suppress or to dismiss. When no such findings are made on the record, we examine the record to determine the implicit findings that underlie the trial court's determination and uphold those implicit findings if they are supported by substantial evidence. *State v. Carr,* 123 Idaho 127, 129, 844 P.2d 1377, 1379 (Ct.App. 1992); *State v. Middleton,* 114 Idaho 377, 380, 757 P.2d 240, 243 (Ct.App.1988). In order to deny the motion, the magistrate had to find that an offense was committed in the presence of the officers, i.e., that the women were asked to leave the theater and they did not comply. However, when reviewing an officer's conduct, an objective standard is used, not the subjective viewpoint of the

officer. *Middleton,* 114 Idaho at 381, 757 P.2d at 244.

■ At the hearing on the motion to suppress or to dismiss, no testimony was offered. The parties relied upon the written statements submitted to the court along with the motion. Given the statements made by the officers involved as well as the statement of Ballard, the manager, the magistrate's determination that an offense was being committed in the officers' presence is supported by substantial evidence. Ballard's statement indicates that he notified the women that they would have to leave if they did not discard the popcorn. Upon arriving at the scene, the officers were informed that the women had been asked to leave by Ballard and had refused. The officers then also relayed to the women, the request of the manager that they leave the theater. As long as Bowman remained on the property once she was told to leave, she was committing the continuing offense of trespass.

A continuing offense is a continuous, unlawful act set in motion by a single impulse and operated by unintermittent force. *State v. Barlow's, Inc.,* 111 Idaho 958, 961, 729 P.2d 433, 436 (Ct.App.1986). Therefore, when the officers arrived and viewed the women still in the theater, they could have reasonably believed that a trespass offense was being committed in their presence. It is important to note that the taking of the popcorn into the theater is not the offense in question. The fact that Bowman did not possess the popcorn is irrelevant. Instead, once the manager requested that the women leave the theater, *for whatever reason,* they committed a trespass by refusing to do so and by remaining on the premises. We will discuss in further detail, in section D below, the manager's authority to revoke the women's license to remain on the theater property. However, for the purpose of the suppression and dismissal motion, there was substantial evidence, found in the documents in the record below, to warrant a denial of suppression or dismissal. The magistrate did not err in this regard.

## B. FAILURE TO DISMISS JURORS FOR CAUSE.

■ Bowman alleges that the trial court erred when it failed to excuse three prospective jurors who were members of a Church of Jesus Christ of Latter Day Saints (LDS) ward over which the prosecutor presided as Bishop. These jurors were excused during the peremptory challenge phase of jury selection and did not sit as part of the jury which tried the case. Nevertheless, Bowman urges that because the prospective jurors were not excused for cause, she was forced to expend three peremptory challenges to remove them and, therefore, deserves a new trial.

The method by which a party may excuse a potential juror for cause is set forth in I.C. §§ 19–2018 through 19–2020. At issue in this case is the challenge for "particular cause." Such particular cause must be either for "implied" bias or "actual" bias. I.C. § 19–2019. Bowman notes in her brief that these jurors were not challenged for actual bias under I.C. § 19–2019(2), but were only challenged for implied bias under § 19–2019(1) and § 19–2020(2). Bowman recognizes that the relationship complained of in this case, that of church leader/church member, is not specifically covered by I.C. § 19–2020(2). She argues, however, that this situation is unique because it is highly unusual for a minister or other member of the clergy to serve as an attorney. Because of the confidential nature of the relationship between the LDS bishop and a member of the ward, Bowman argues that this relationship is closely analogous to that of attorney and client. Although we agree with Bowman that this is an unusual situation, we are constrained to follow the language of the statute which specifically states:

19–2020. **Grounds of challenge for implied bias.**—A challenge for implied bias may be taken for all or any of the following causes *and for no other:* ...

2. Standing in the relation of guardian and ward, attorney and client, master and servant, or landlord and tenant, or being a member of the family or boarder or lodger of the defendant, or of the person alleged to be injured by the offense charged or on

whose complaint the prosecution was instituted, or in his employment on wages. (Emphasis added.)

Because the legislature saw fit to include the language "and for no other" we will not extend the statute to situations that are analogous, but not specifically mentioned. As such, the magistrate correctly ruled that the relationship at issue was not covered by the statute and properly denied the challenge for implied bias.

## C. JURY INSTRUCTIONS.

Bowman raises two claims concerning the instructions given to the jury. First, she claims that the magistrate erred when it failed to give her proposed jury instruction No. 14 which stated:

A jury must not convict a defendant merely as an example to others. You have no right to find the defendant guilty only for the purposes of deterring others from committing criminal acts.

As a second error, Bowman alleges that the magistrate failed to properly instruct the jury on the law of arrest.

 We first note that when reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect the applicable law. *State v. Enno,* 119 Idaho 392, 405, 807 P.2d 610, 623 (1991). To be considered reversible error, an instruction must have misled the jury or prejudiced the complaining party. *Salinas v. Vierstra,* 107 Idaho 984, 991, 695 P.2d 369, 376 (1985).

 As to the failure to give proposed instruction No. 14, we find no error. Bowman claims this was an instruction offered to rebut the inflammatory comments made by the prosecution during closing arguments. The comments, however, were not objected to during the closing argument. Further, the magistrate informed the jury in instruction No. 10 of its duty to determine the facts and apply the law to the facts. The jury was also instructed as to the elements of each crime that must be found in order to find Bowman guilty. Instruction No. 10 went on to direct that the jury should be guided neither by sympathy nor prejudice and that

remarks of counsel, without a basis in evidence, should be disregarded. These admonitions, in addition to the other instructions given, lead us to conclude that exclusion of instruction No. 14 was not error.

 As to the instructions on the law of arrest, we also find no error. Bowman argues that the magistrate should have instructed the jury on the officers' duty to inform the women why they were being arrested as required by I.C. § 19–608 and 19–610. Bowman also claims that the jury should have been instructed that each of the elements of the offense must have taken place in the officers' presence before an arrest could be made. Bowman conceded during oral argument that instructions No. 29 and 30 adequately covered the issue of a peaceful versus a non-peaceful arrest. Bowman argues, however, that the jury should have been instructed on the consequences of an unlawful versus a lawful arrest. The determination of the legality of an arrest is a question which involves the admissibility of evidence. As such, it is a question of law to be determined by the court, not the jury. *People v. Villareal,* 262 Cal.App.2d 438, 447–48, 68 Cal.Rptr. 610, 616 (Cal.Ct.App.1968). An unlawful arrest is not a defense to the underlying charge, but is merely a bar to the admission of certain evidence. *Gerstein v. Pugh,* 420 U.S. 103, 119, 95 S.Ct. 854, 865–66, 43 L.Ed.2d 54 (1975); *Perry v. State,* 478 So.2d 494, 495 (Fla.Dist.Ct.App.1985). Because we have previously concluded that the arrest was lawful and the motion to suppress was properly denied, we hold the jury was properly instructed on the law of arrest. Therefore, the magistrate did not err by refusing to give further instructions on that subject.

## D. DENIAL OF THE MOTION FOR ACQUITTAL.

Following the presentation of the state's case, Bowman moved for a judgment of acquittal under I.C.R. 29. The magistrate reserved its ruling on this motion until the jury had rendered the verdicts. The magistrate subsequently denied the motion as to the battery and obstructing charges and granted

the motion as to the trespass charge. We will separately consider each of the charges.

When reviewing a decision on a motion for judgment of acquittal, we independently consider the evidence in the record and determine whether a reasonable mind would conclude that the defendant's guilt as to each material element of the offense was proven beyond a reasonable doubt. In making such a determination, all reasonable inferences are to be taken in favor of the state. *State v. Printz*, 115 Idaho 566, 567, 768 P.2d 829, 830 (Ct.App.1989).

### 1. *Battery.*

At trial, there was a great deal of evidence regarding Bowman's conduct during the incident in question. Witnesses testified that Bowman bit Officer Egbert's hand, "slugged" him on at least two occasions, kicked him numerous times and spit in his face twice. Bowman does not deny that a "scuffle" ensued following the arrest, but claims that any battery on her part was provoked and justified by the officers' excessive force. The jury was given instruction No. 30, which stated:

> You are instructed that any officer is not permitted to use unreasonable or excessive force in making an otherwise lawful arrest.
>
> If an officer does use unreasonable or excessive force in making an arrest, the person being arrested may lawfully use reasonable force to protect him/herself.
>
> Thus, if you find that the officer(s) used unreasonable or excessive force in making or attempting to make the arrest in question, and that the Defendant used only reasonable force to protect him/herself, the Defendant is not guilty of battery on a police officer.

As noted by Bowman in her brief, this instruction came from the case of *State v. Spurr*, 114 Idaho 277, 755 P.2d 1315 (Ct.App. 1988), where the court observed that, "The determination of whether excessive force has been used is a question of fact for the jury." 114 Idaho at 279, 755 P.2d at 1317. The magistrate also gave instruction No. 29, which stated:

You are instructed that if a person has reasonable grounds to believe that he is being arrested by a peace officer, it is his duty to refrain from using force or any weapon in resisting a peaceful arrest, regardless of whether or not there is a legal basis for the arrest. An individual may not use force to resist a peaceful arrest by one he knows, or has a good reason to believe, is an authorized peace officer in the performance of his duties.

At the trial, there were differing accounts of the amount and nature of force used during the arrest. Bowman argues that because some of the witnesses testified that the police used excessive force, the evidence was insufficient to support a guilty verdict on the charge of battery upon a police officer. In light of the instructions above, and the testimony of other witnesses that Bowman, in fact, was the aggressor, we cannot say the evidence was insufficient. The question was primarily for the determination of the jury. We will not second-guess the jury in matters of credibility of the witnesses and the weight given to the evidence. As long as there is sufficient evidence such that a reasonable mind could find guilt beyond a reasonable doubt, the jury verdict must stand. We hold the magistrate did not err in denying the motion for judgment of acquittal as to the charge of battery upon a peace officer.

### 2. *Obstructing an Officer.*

At trial, the magistrate instructed the jury by instruction No. 28, that the charge of obstructing an officer was based only on the events that transpired at the police station. Testimony of the witnesses included evidence that Bowman, while at the station, was yelling and screaming at the officers, was loud, boisterous and combative, verbally attacked one of the officers, threatened to "kick the shit out of" Officer Egbert and spit in Officer Egbert's face. A tape recording of a portion of the occurrences at the police station was played for the jury. The magistrate gave instruction No. 21, stating that:

> In this case, to warrant a verdict of guilty of the crime of obstructing, resisting or delaying an officer, you must find from

the evidence, beyond a reasonable doubt, that

1. the Defendant, while in the State of Idaho, County of Madison

2. willfully resisted, delayed, or obstructed

3. a public officer

4. in the discharge, or attempt to discharge any duty of his office

These are the essential elements or material allegations of the crime of resisting, obstructing, or delaying an officer charged in this case, [and] the State of Idaho is required to prove each of these elements beyond a reasonable doubt.

 Again, we are asked to supplant the jury's finding of fact in this matter. Whether a defendant's action would delay or obstruct an officer in discharging official duties is a question of fact to be determined by the jury. *State v. Latimer,* 9 Kan.App.2d 728, 687 P.2d 648, 653 (1984). *See also, State v. Wilkerson,* 114 Idaho 174, 180, 755 P.2d 471, 477 (Ct.App.1988). There may be circumstances where speech alone—even arguments or insults directed to an officer—is insufficient to constitute obstructing, resisting or delaying an officer. *See, e.g., State, in the Interest of Goodman,* 531 P.2d 478 (Utah, 1975); *State v. Tages,* 10 Ariz.App. 127, 457 P.2d 289 (1969). However, in the present case, there was sufficient evidence upon which a reasonable jury could conclude that Bowman's behavior at the police station amounted to resisting, obstructing or delaying an officer. The magistrate, therefore, did not err in denying the motion for acquittal.

### 3. *Trespass.*

 At trial, the magistrate instructed the jury on the law of trespass as follows:

In this case, to warrant a verdict of guilty of the crime of trespass, you must find from the evidence, beyond a reasonable doubt, that

1. the Defendant while in the State of Idaho, County of Madison[ ]

2. willfully and by privilege or license

3. entered into the property of another

4. and by her conduct, or her actions forfeited her privilege or license to remain on the property

5. and was notified either in writing or verbally to depart

6. by the owner or authorized agent

7. and who unlawfully refused to immediately depart after being so notified.

These are the essential elements or material allegations of the crime of trespass charged in this case, and the State of Idaho is required to prove each of these elements beyond a reasonable doubt.

At the close of trial, the magistrate granted Bowman's motion for a judgment of acquittal as to the trespass charge, finding that "A license to be on property cannot be arbitrarily revoked." The magistrate ruled that because there was no evidence presented that Bowman had affirmatively acted to lose her license by purchase of the admission ticket, the jury could not properly find a trespass.

On appeal, the district court reinstated the verdict for trespass, concluding that the instructions given at the trial level did not properly reflect Idaho law. The error in the instruction favored Bowman by requiring the state to prove that by her conduct or actions, Bowman had forfeited her privilege or license to remain on the property. The jury, nevertheless, found Bowman guilty. Thus, any error found in the instruction must be considered harmless. The district court, in its appellate capacity, found that the license was properly revoked when Ballard asked Bowman to leave the theater. We agree with the reasoning of the district court and, therefore, reverse the judgment of acquittal entered by the magistrate.

The issue to be decided by this Court is whether Bowman's license, evidenced by a movie theater ticket, could be revoked under the circumstances of this case. Bowman was found guilty of violating I.C. § 18–7008(8), which defines misdemeanor trespass to include:

Every person, except under landlord-tenant relationship, who, being first notified in writing, or verbally by the owner or authorized agent of the owner of real prop-

erty, to immediately depart from the same and who refuses so to depart after being so notified[.]

 Bowman relies on the magistrate's conclusion that once a license is granted, it cannot be revoked arbitrarily. Although Bowman claims this is the "common sense" approach, we cannot read such a limitation into the statute. It is well-settled that a license is ordinarily revocable at will. *Branson v. Miracle*, 111 Idaho 933, 936, 729 P.2d 408, 411 (Ct.App.1986), *citing West v. Smith*, 95 Idaho 550, 511 P.2d 1326 (1973). Furthermore, the Idaho Supreme Court has refused to read a general reasonableness requirement into the trespass statute, holding that "Idaho Code § 18–7008(8) does not require that the owner[s] of private property have any reason for asking trespassers to get off their land." *State v. Missamore*, 119 Idaho 27, 31, 803 P.2d 528, 532 (1990). *See* 75 AM.JUR.2D *Trespass* § 189 (1991). Although *Missamore* dealt with a trespasser who had not gained a license to be on the property in the first place, we believe the same principle is applicable to a personal license for the temporary use of private property. Many jurisdictions are in accord with this view. In a civil case with facts similar to the one at bar, the Appellate Division of the Supreme Court of New York said "An admission ticket to a place of public amusement is merely a license which is revocable, without cause, at the will of the proprietor." *Impastato v. Hellman Enterprises, Inc.*, 147 A.D.2d 788, 537 N.Y.S.2d 659, 661 (N.Y.App.Div. 1989). *See also, Gorman v. United Theatres*, 177 So. 463 (La.Ct.App.1937); 25 AM. JUR.2D *Easements and Licenses* § 128 (1966); Alfred F. Conard, The Privilege of Forcibly Ejecting an Amusement Patron, 90 U.Pa.L.Rev. 809 (1942).

There are some statutes, including the trespass statute suggested under the Model Penal Code, which allow as an affirmative defense the fact that the premises were "open to the public" and the actor complied with all lawful conditions of entry or remaining on the premises. This defense, however, has never been adopted in Idaho. Currently, the only exclusion listed under I.C. § 18–7008(8) is for a landlord/tenant relationship. We decline to expand the exclusions under this statute to include licensor/licensees.

We therefore reverse the magistrate's decision granting the judgment of acquittal and we order that the jury verdict be reinstated.

## E. MOTION FOR A NEW TRIAL.

The final issue raised by Bowman is the denial of her motion for a new trial made at the close of the proceedings. This motion was based on the errors alleged above. Because we have concluded no error was committed by the magistrate that warrants a new trial, we also conclude that the motion for the new trial was properly denied.

## CONCLUSION

The magistrate did not err when it denied Bowman's motion to suppress or dismiss based on her arrest. Furthermore, the magistrate committed no error when it failed to excuse the prospective jurors who were members of the prosecutor's ward. The jury was properly instructed and the motion for a new trial was properly denied. The magistrate properly denied the motion for judgment of acquittal as to the battery and obstructing charges but erred in granting the motion as to the trespass charge. We therefore affirm in part, reverse in part and remand to the magistrate for further proceedings consistent with this opinion.

WALTERS, C.J., and LANSING, J., concur.