880 P.2d 257

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Kelvin Ray PATTERSON, Defendant–Appellant.**

No. 20522.

Court of Appeals of Idaho.

Aug. 4, 1994.

Petition for Review Denied Sept. 22, 1994.

228

Terry S. Ratliff, Mountain Home, for appellant.

Larry EchoHawk, Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Boise, for respondent. Lynn E. Thomas argued.

LANSING, Judge.

Kelvin Ray Patterson appeals from his conviction for felony injury to a child, I.C. § 18–1501(1).[1] The sole issue on appeal is whether the district court erred in refusing to give Patterson's requested jury instructions regarding evidence that an abnormal mental condition prevented him from forming the mental state that is an element of the crime. We conclude that it was not error for the district court to refuse the instructions.

Patterson was charged with the aforementioned crime in connection with injuries suffered by his step-daughter who was then twenty-two months old. At trial the focus of Patterson's defense was that the *mens rea* element of the offense was not extant when he injured the child. He contended that he should not be convicted because he did not act "willfully" as is required for guilt under I.C. § 18–1501(1).

A psychiatrist called by Patterson testified that, in his opinion, Patterson was suffering from attention deficit disorder, mixed personality disorder and feelings of depression. Following a question asking for the psychiatrist's opinion as to whether Patterson willfully injured the victim, the psychiatrist testified:

That he did not, he did not have an opinion—or an impulse to willfully harm her. He didn't have that capacity to do that.

. . . .

Because he is so impulsive, he acts before he thinks. And although I can't be sure what was going on in his mind, my examination leads me to believe that he was probably frustrated by something and possibly did grab the child or possibly even throw her. I can't say whether he did or he didn't, but it's quite possible. But even if he did, he would not have done that with the willful intent to hurt her.

. . . .

He had no intention of hurting her.

The psychiatrist further testified that Patterson was:

Dealing with his frustration. You know, just kind of getting the kid out of his sight or—you know, he wouldn't have thought about it. It would have been an impulsive act because obviously it wouldn't have calmed the kid down or solved any problems. But people with impulse control problems just react. They don't think. They just react and they can get into very bad accidents, just as he himself did when he was a child.[2]

<hr />

1. I.C. § 18–1501(1) provides:
   Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of such child to be injured, or willfully causes or permits such child to be placed in such situation that its person or health is endangered, is punishable by imprisonment in the county jail not exceeding one (1) year, or in the state prison for not less than one (1) year nor more than ten (10) years.

2. The State has not challenged the relevance of this evidence. Therefore, we intimate no view as to whether impulsivity as described by the psychiatrist constitutes a mental condition that

At the jury instruction conference, Patterson requested that the following instructions be given to the jury:

*Defendant's requested Instruction # 1:* One of the issues in this case is whether the Defendant was suffering from an abnormal mental condition at the time the act charged in this information was committed.

Suffering from such an abnormal mental condition, provides a legal excuse for the commission of a crime only if the effect of the mental condition makes it impossible for the Defendant to have willfully done that with which he is accused. Evidence that the Defendant acted while under said abnormal mental condition may be considered by you, together with all the other evidence, in determining whether or not he did in fact have the intent to willfully do that with which he is accused.

If, after considering all the evidence, you have a reasonable doubt as to whether, because of the abnormal mental condition, Defendant had the willfulness necessary for willfully causing the harm done, then you must find him not guilty.

*Defendant's requested jury Instruction # 2:* When a defendant is charged with a crime which requires that a certain specific intent or mental state be established in order to constitute the crime or degree of crime, you must take all the evidence into consideration and determine therefrom if, at the time when the crime allegedly was committed, the defendant was suffering from some abnormal mental or physical condition, however caused, which prevented him from forming the specific intent or mental state essential to constitute the crime or degree of crime with which he is charged.

If from all the evidence you have a reasonable doubt whether defendant was capable of forming such specific intent or mental state, you must give defendant the benefit of that doubt and find that he did not have such specific intent or mental state.

The court refused to give either requested instruction.

could negate intent or willfulness as an element of a crime. For purposes of this opinion, we

■ Patterson was found guilty. On appeal he contends that the requested instructions were essential to give the jury guidance as to how to "use" the expert testimony in determining whether Patterson was guilty. Patterson's assertion raises a question of law over which we exercise free review. *State v. Barker,* 123 Idaho 162, 165, 845 P.2d 580, 583 (Ct.App.1992); *State v. Tomes,* 118 Idaho 952, 801 P.2d 1303 (Ct.App.1990).

Preliminarily, we will review the statutory basis for the admission of the expert testimony concerning a criminal defendant's mental condition. In 1982, the Idaho Legislature abolished the insanity defense in criminal cases by repealing I.C. § 18–209 and enacting I.C. § 18–207. The latter statute provides in relevant part:

> (a) Mental condition shall not be a defense to any charge of criminal conduct.
>
> . . . .
>
> (c) Nothing herein is intended to prevent the admission of expert evidence on the issues of *mens rea* or any state of mind which is an element of the offense, subject to the rules of evidence.

Our Supreme Court has said of this statute:

> I.C. § 18–207 reduces the question of mental condition from the status of a formal defense to that of an evidentiary question. Section 18–207(c), Idaho Code, continues to recognize the basic common law premise that only responsible defendants may be convicted.

*State v. Beam,* 109 Idaho 616, 621, 710 P.2d 526, 531 (1985), *cert. denied* 476 U.S. 1153, 106 S.Ct. 2260, 90 L.Ed.2d 704 (1986).

■ Hence, Section 18–207(c) authorizes the admission of expert testimony to rebut the State's evidence that the defendant possessed the state of mind that is necessary for commission of the crime charged. *State v. Card,* 121 Idaho 425, 430, 825 P.2d 1081, 1086 (1991), *cert. denied* —— U.S. ——, 113 S.Ct. 321, 121 L.Ed.2d 241 (1992); *State v. Searcy,* 118 Idaho 632, 635, 798 P.2d 914, 917 (1990). The statute does not, however, answer the

assume that the evidence was relevant to the mens rea element of the charged felony.

question before this Court—the extent to which a defendant is entitled to an instruction, as urged by Patterson, to provide a "road map" to the jury identifying the issue to which the expert evidence was relevant.

■ In Idaho, a trial judge must charge the jurors with "all matters of law necessary for their information." I.C. § 19–2132(a). A defendant is entitled to have the jury instructed on all points of the law applicable to a defense theory that there was a justification or excuse for commission of the offense. *State v. Spurr,* 114 Idaho 277, 279, 755 P.2d 1315, 1317 (Ct.App.1988). We have vacated convictions where rules of substantive law material to the determination of the defendant's guilt were not included in the instructions given. In *Spurr,* the defendant was found guilty of obstructing a police officer and committing a battery upon a police officer. We held that the trial court erred in failing to instruct the jury that if the arresting officer used excessive force, Spurr had a right to reasonably defend himself. Because there was evidence from which the jury could have found that the arresting officer used force to an excessive degree, the omission of that jury instruction was deemed reversible error. Similarly, in *State v. Evans,* 119 Idaho 383, 807 P.2d 62 (Ct.App.1991), we vacated a conviction for burglary with intent to commit theft because the jury was not adequately instructed on Idaho law concerning the circumstances under which the appropriation of lost property constitutes theft.

■ Although it is error for the court to refuse requested instructions on points of law that are not otherwise covered and are pertinent to a defense theory, instructions are unnecessary and need not be given where the subject they address is adequately covered by other instructions given to the jury.[3] *State v. Johns,* 112 Idaho 873, 880–81, 736 P.2d 1327, 1334–35 (1987); *State v. Olsen,* 103 Idaho 278, 285, 647 P.2d 734, 741 (1982).

In Patterson's case we conclude that the instructions given by the court adequately covered the subject. Patterson's requested instructions do not introduce points of law that are otherwise inadequately addressed. The proposed instructions in essence would merely tell the jurors that they may consider the evidence of Patterson's mental condition in determining whether the State has proved beyond a reasonable doubt that he had the requisite mental state for commission of the crime.

■ The instructions that the court gave covered these points.[4] The jury was instructed on the elements of the offense defined by I.C. § 18–1501(1) and was informed that the burden was on the State to prove the defendant guilty beyond a reasonable doubt. The instructions addressed the *mens rea* element of the crime with particularity. The necessary mental state for felony injury to a child is identified by Section 18–1501(1) to be "willfulness" in causing or permitting a child to suffer pain or injury under circumstances likely to create great bodily harm or death. The jury was given a definition of "willfully" consistent with the definition found in Idaho Code § 18–101(1). The instructions also noted that experts had given their opinions on questions in controversy at trial. The jurors were told that, to assist them in deciding such questions, they could consider an expert witness' opinion, with any reasons given for the opinion, but that the jury was not bound to accept an expert opinion as conclusive and could disregard any such opinion found to be unreasonable. These instructions that were given adequately covered the subject matter addressed by Patterson's requested instructions.

Patterson argues that without his requested instructions, which discuss the mental condition issue more specifically than do the instructions that were given, the jury had no direction as to how to use the psychiatrist's

---

3. A requested instruction may also be refused as improper if it is erroneous in its statement of the law, is not supported by the evidence or constitutes an impermissible comment on the evidence. *State v. Johns, supra.* Because we conclude that the instructions given adequately covered the subject addressed by the requested instructions, we need not determine whether the requested

instructions were improper in addition to being unnecessary.

4. Patterson does not assert any error or misstatement of the law in the instructions given, but only contends that his proposed instructions should have been added.

testimony and that the jury could not have understood the significance of this testimony. The trial record belies this argument. The central testimony of the psychiatrist on Patterson's mental state was given following a question that asked: "[W]ere you able to form an opinion as to whether or not Kelvin Patterson willfully injured [the victim]?" With the instructions that were given, the jury could hardly have missed the point that this testimony bore upon whether Patterson possessed the mental state that was a required element for the crime charged. Further, Patterson's counsel was free to draw the jury's attention to the psychiatrist's testimony and explain his view of its significance during closing argument.

Because the instructions given by the court were adequate to cover the subjects addressed by Patterson's proffered instructions, the additional requested instructions were unnecessary. Therefore, the trial court did not err in refusing to give them.

We do not suggest that it would be error for trial courts to instruct juries that expert evidence of a defendant's mental condition may be considered in determining whether the *mens rea* element of a crime has been proved. We hold only that such an instruction was not essential in the case before us in light of the instructions actually given and the nature of the testimony that the jury heard.

The district court did not err in refusing the proffered instructions. The judgment of conviction is affirmed.

WALTERS, C.J., and PERRY, J., concur.