944 P.2d 134

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Michael Francis DRAGOMAN, Defendant–Appellant.**

**No. 22782.**

Court of Appeals of Idaho.

June 5, 1997.

Rehearing Denied Oct. 6, 1997.

Hart & Kohler Law Offices, Idaho Falls, for appellant. Jay A. Kohler argued, Idaho Falls.

Alan G. Lance, Attorney General; John C. McKinney, Deputy Attorney General, argued, Boise, for respondent.

PERRY, Judge.

Michael Francis Dragoman appeals from his judgment of conviction for two counts of attempted kidnapping in the second degree. I.C. §§ 18–4501, –4503, and –306. Dragoman asserts that the district court erred in: (1) refusing to permit his expert witness to testify about whether an average person with a blood alcohol concentration (BAC) equivalent to Dragoman's could have formed the necessary intent to commit the offenses; (2) refusing to instruct the jury on the definition of intent; and (3) admitting evidence presented by rebuttal witnesses who testified concerning Dragoman's conduct on prior occasions when he had consumed alcohol and about his reputation in the community for using alcohol. We vacate Dragoman's judgment of conviction and remand for a new trial.

## I.

## BACKGROUND

The facts of this case are not in dispute. On August 4, 1995, Dragoman grabbed M.G. and L.L. as they exited a convenience store in Idaho Falls and attempted to force them into L.L.'s car. The women freed themselves and ran. Dragoman pursued L.L. and pulled her to the ground. L.L.'s screams alerted others in the neighborhood who detained Dragoman until police officers arrived and arrested him. Dragoman's BAC was taken at a hospital several hours later and measured .20.

Dragoman was charged with two counts of attempted kidnapping in the second degree and went to trial before a jury. His offered defense was that, because he was acutely intoxicated, he did not have the ability to form the necessary intent to commit the crimes. The jury found him guilty on both counts. The district court entered a judgment of conviction and sentenced Dragoman to concurrent unified terms of ten years, with seven years fixed. Dragoman appeals.

## II.

## DISCUSSION

### A. Scope of Expert Witness Testimony

Prior to trial, defense counsel proposed to call an expert witness to testify regarding Dragoman's intoxication and its effect on his ability to form the necessary intent to commit the crime of attempted kidnapping. Defense counsel also wanted to question the expert concerning whether an average person with a BAC equivalent to Dragoman's could have formed the necessary intent to commit the offenses. The state filed a motion in limine, seeking to limit the proposed testimony. After two hearings and extended argument, the district court granted the state's motion, stating:

[Defense counsel] will be allowed, through [its expert], to inquire as to every person, the facts and circumstances that are really a part and parcel of the defense in this case. [Defense counsel] will be explicitly excluded from asking whether "every man" [at Dragoman's level of impairment] will be able to form an intent, and also the follow up question, could Mr. Dragoman form the intent.

Dragoman asserts the district court erred in limiting the scope of his expert witness's testimony.

Preliminarily, we note that at oral argument Dragoman's counsel conceded that the issue as stated in appellant's brief—whether the expert could testify that Dragoman could not have formed the necessary intent to commit the offenses—was not preserved for appeal. Therefore, we will address only the issue of the expert's testimony as to whether an average person with a BAC equivalent to Dragoman's could have formed the necessary intent to commit the offenses.

### 1. Issue not moot

The state asserts that this issue is moot because defense counsel actually presented this question to the expert, Dr. Dodson, on direct examination. The following is the exchange between defense counsel and Dr. Dodson:

Q. By [Defense Counsel]: Would such an individual [at Dragoman's level of intoxication] have an idea, would that individual be able to have an idea?

A. In my professional opinion eight out of a 100 would not be able to form an idea at that alcohol concentration.

Q. Would they be able to follow through on that idea?

A. That assumes they would have an idea. And it would be my professional opinion that I doubt they would have an idea at that alcohol concentration.

Q. And so what would their ability be to follow through with an idea?

A. Slim to none.

Q. Would an impairment be, as we talked about, judgment?

A. Would be significantly impaired, not capable of making judgment.

Q. And would judgment include having ideas?

A. Absolutely.

Q. And would judgment include following through on those ideas?

A. Absolutely.

The state contends that the cognitive ability to form an idea is substantially the same as, if not identical to, the ability to form an intent. The state argues that any error on the part of the district court was remedied by the fact this testimony was actually admitted at trial.

On cross-examination, the prosecutor questioned Dr. Dodson on what he meant by an idea. Dr. Dodson responded, "Insight to the ability to perform a mental function...." Dr. Dodson further elaborated by providing the following example of two intoxicated young men who died canoeing:

Their *intent* was we are going to go canoeing. The judgment was so severely impaired that this was not a good *idea.*

But they were unable to form a judgment, they were unable to make a decision based on all the things that would be involved. This was not a very good *idea.*

They went out in the canoe at 9:00 o'clock at night and they capsized it and they both went to the bottom of the reser-

voir. The canoe was found the next day and the two young men were dead, they had drowned. They had an alcohol concentration of .1 to .15....

Their judgment was so significantly impaired that these gentlemen could not make the decision based on the information the brain was receiving.

Well, the kids go, "I *intend* to go canoeing," but it was a very poorly thought out process. Their judgment was impaired, their decision-making insight, it was not a good *idea.*

(emphasis added).

In consideration of Dr. Dodson's usage of the terms idea and intent, this Court is unpersuaded that Dragoman's ability to form an idea, as used by Dr. Dodson, is substantially the same as the ability to form an intent. Thus, Dragoman is not precluded from raising this issue.

### 2. Scope of Dr. Dodson's expertise

■ The state also asserts that Dr. Dodson's expertise was, by his own testimony, limited to the effects of alcohol on lower brain functions and the chemical makeup of the brain. The state asserts that it was never established that Dr. Dodson had any specialized knowledge relating to the effect of alcohol on higher brain functions, especially the cognitive ability of the human brain to formulate intent.

In the state's motion in limine, the state argued that Dr. Dodson's testimony regarding this issue was objectionable because it invaded the province of the jury. The state failed to raise below that Dr. Dodson was precluded from testifying on this subject matter because he was not qualified. Had the state done so, Dragoman may have produced additional evidence in this regard. Accordingly, the state is foreclosed from urging, for the first time on appeal, that the testimony was objectionable because a proper foundation was not established for this testimony.

### 3. Admissibility of testimony

Dragoman asserts it was error to prohibit defense counsel from asking Dr. Dodson whether an average person with a BAC

equivalent to Dragoman's could have formed the necessary intent to commit the crimes. Dragoman argues that because this proposed testimony was not communicated to the jury, the jury was left to speculate whether such an individual could have formed the necessary intent based on their everyday observations. Accordingly, Dragoman claims he was prejudiced by the district court's ruling.

■ An act is not made less criminal because an individual is intoxicated when committing the act. I.C. § 18–116.[1] However, because intent is an element of the crime of kidnapping in the second degree, the jury may take into consideration the fact that the accused was intoxicated at the time in determining the intent with which the accused committed the act. *Id.;* I.C. §§ 18–4501 and –4503. Additionally, while a defendant's mental condition has been expressly eliminated as a defense under I.C. § 18–207(1), the defendant may still use expert evidence on the issue of the defendant's state of mind where it is an element of the offense. I.C. § 18–207(3). Such evidence is subject to the rules of evidence. *Id.*

■ Expert testimony is only admissible when the expert's specialized knowledge will assist the trier of fact understand the evidence and determine a fact in question. I.R.E. 702; *State v. Walters,* 120 Idaho 46, 55, 813 P.2d 857, 866 (1991); *State v. Hopkins,* 113 Idaho 679, 680–81, 747 P.2d 88, 89–90 (Ct.App.1987). However, an expert's opinion is not inadmissible merely because it embraces an ultimate issue to be decided by the trier of fact. I.R.E. 704;[2] *State v. Crawford,* 110 Idaho 577, 581, 716 P.2d 1349, 1353 (Ct.App.1986). The admissibility of expert opinion testimony is discretionary and will not be disturbed on appeal absent a showing of an abuse of discretion. *State v. Winn,* 121 Idaho 850, 855, 828 P.2d 879, 884 (1992). When a trial court's discretionary decision in a criminal case is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the court reached its decision by an exercise of reason. *State v. Hedger,* 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

■ Dragoman's offered defense was that because he was so acutely intoxicated, he did not have the ability to form the necessary intent to attempt the crime of second degree kidnapping. To help the jury understand the effects of alcohol on an individual, the defense called Dr. Dodson. Doctor Dodson was qualified as an expert in the area of pharmacology and toxicology. Doctor Dodson's expertise included a study of the effects of alcohol on the human brain and central nervous system. Doctor Dodson began his testimony by extrapolating an individual's BAC knowing that the individual's BAC was .20 almost three hours later. Doctor Dodson testified that this hypothetical male individual, who had a similar weight of Dragoman, would have roughly a BAC of .25 at that particular time. Additionally, Dr. Dodson testified to how an individual absorbs alcohol and metabolizes alcohol. Doctor Dodson also testified to the effects of intoxication on an individual's system and the ability to perform certain functions. However, the district

---

1. Idaho Code Section 18–116 was amended by the legislature in 1997 to read as follows:

   A person who is in an intoxicated condition is criminally responsible for his conduct and an intoxicated condition is not a defense to any offense and may not be taken into consideration in determining the existence of a mental state which is an element of the offense unless the defendant proves that he did not know that it was an intoxicating substance when he consumed, smoked, sniffed, injected or otherwise ingested the substance causing the condition.
   (1997 Idaho Sess.Laws Ch. 53). The amendment becomes effective July 1, 1997, and has no bearing on the case at hand.

2. Unlike Idaho Rule of Evidence 704, the federal counterpart expressly disallows certain expert testimony regarding the mental state of a criminal defendant. Federal Rule of Evidence 704(b) states:

   No Expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

court precluded defense counsel from asking Dr. Dodson whether this hypothetical individual could have formed the necessary intent to commit the charged offenses.

Dragoman was entitled to expert testimony which would assist the jury in determining his mental state at the time of the offenses. Defense counsel questioned Dr. Dodson using a hypothetical individual. Doctor Dodson testified extensively that alcohol affects individuals differently and that individuals exhibit different degrees of impairment when intoxicated. Doctor Dodson also testified about a multitude of other factors influencing the effects of alcohol on individuals. Although Dr. Dodson extrapolated the hypothetical individual's BAC using several of Dragoman's attributes, which led to the inference that Dragoman had a BAC of .25 at the time of the incident, there was no implication that this individual was a mirror image of Dragoman. Thus, Dr. Dodson's testimony, under these circumstances, could not have been viewed as invading the province of the jury and instructing it how to decide the case. Rather, such testimony would have assisted the jury in understanding the evidence and determine a fact in issue. *See State v. Simko,* 71 Ohio St.3d 483, 644 N.E.2d 345, 353 (1994), *cert. denied,* 516 U.S. 831, 116 S.Ct. 103, 133 L.Ed.2d 57 (1995); *Fitzgerald v. Commonwealth,* 223 Va. 615, 292 S.E.2d 798, 806 (1982), *cert. denied,* 459 U.S. 1228, 103 S.Ct. 1235, 75 L.Ed.2d 469 (1983); *see also United States v. Cook,* 53 F.3d 1029, 1031 (9th Cir.1995), *cert. denied,* 516 U.S. 896, 116 S.Ct. 249, 133 L.Ed.2d 174 (1995); *United States v. Salamanca,* 990 F.2d 629, 636–37 (D.C.Cir.1993), *cert. denied,* 510 U.S. 928, 114 S.Ct. 337, 126 L.Ed.2d 281 (1993). *But see United States v. Dennison,* 937 F.2d 559, 565 (10th Cir.1991), *cert. denied,* 502 U.S. 1037, 112 S.Ct. 886, 116 L.Ed.2d 789 (1992). Accordingly, we conclude that, if a proper foundation was established, defense counsel should have been allowed to ask Dr. Dodson whether an average person with a BAC equivalent of Dragoman's could have formed the necessary intent to commit the offenses. Thus, the district court erred in disallowing this evidence.

**B. Jury Instructions**

After the state rested its case, the district court conducted a jury instruction conference. At the conclusion of the conference, defense counsel asked the district court why an instruction defining intent was not included with the instructions. The district court responded:

> Well, because the jury instructions say that you're not supposed to do that. So I'm not doing it. If you want to make an objection, note it. That's for you.

> The comments to the Instructions, the fact that there is a—in fact there's a circular, an internal definition the same as the statutes, and the commentators to the jury instructions say you're not supposed to give that one. So you are not supposed to give the statutory definition of intent, they say you're not supposed to give a definition of every word. That's where I'm going.

> I'll note your objection that is preserved for appeal.

Dragoman asserts as error the district court's refusal to provide the jury with his proposed instruction defining intent. Dragoman's proposed instruction 6 read, "*Intent*: Definition—Intent is the mental purpose to accomplish a specific act prohibited by law."

The question whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Gleason,* 123 Idaho 62, 65, 844 P.2d 691, 694 (1992). When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *State v. Bowman,* 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct.App. 1993). Although it is error for the trial court to refuse requested instructions on points of law that are not otherwise covered and are pertinent to a defense theory, instructions are unnecessary and need not be given where the subject they address is adequately covered by other instructions given to the jury. *State v. Patterson,* 126 Idaho 227, 230, 880 P.2d 257, 260 (Ct.App.1994).

In 1988, the Idaho Supreme Court appointed a committee of lawyers and judges to undertake a comprehensive drafting of pattern criminal jury instructions. The result of

this undertaking was the Idaho Criminal Jury Instructions (ICJI) in 1995. The preface to ICJI recites that the trial courts should exercise "caution and restraint in providing definitional instructions beyond those expressed by statutory declaration." Consistent with this statement, ICJI does not contain an instruction defining intent.

■ The district court properly instructed the jury on the elements of the offense of kidnapping in the second degree. These instructions adequately addressed the intent requirement of this offense. Accordingly, in consideration of the instructions given and in light of the ICJI preface, a separate instruction defining intent was unnecessary. *See Patterson*, 126 Idaho at 231, 880 P.2d at 261. Accordingly, the district court did not err in this regard.

## C. Evidence of Prior Conduct

After the defense rested its case, the state offered three rebuttal witnesses. These witnesses were police officers called to testify regarding their encounters with Dragoman at times when he was intoxicated prior to the instant incident. Only one, officer Hillier, was involved in Dragoman's arrest leading to the charges in this case. Over defense counsel's objection, the district court admitted the proffered testimony, stating:

> There's no question in [I.R.E.] 404 or 405 [the state] get[s] to do this. Specifically 404(b) says it is admissible for purposes of showing intent, other crimes or acts or wrongs.
>
> Also 405(b) talks about essential elements of the charge. Specific intent is a specific element of the charge, to rebut that since [the defense has] brought that into issue.

The district court, however, precluded the officers from testifying about Dragoman's propensity for violence.

**3.** In regard to I.R.E. 405, which is substantively identical to Federal Rule of Evidence 405, the comments by the Idaho State Bar Evidence Committee state that Rule 405 deals "only with allowable methods of proving character, not with the admissibility of character evidence, which is covered by Rule 404." *See also* ADVISORY COM-

■ Dragoman claims the district court erred in admitting testimony from the state's rebuttal witnesses. Dragoman argues that the officers' testimony was not relevant and was highly prejudicial. The state asserts on appeal that Dragoman is precluded from raising this issue because he did not properly object to the offered testimony below. We disagree. In addition to defense counsel's relevancy and Rule 404(b) objections to the proposed rebuttal testimony, counsel specifically requested the exclusion of any testimony relating to prior arrests and prior confrontations with police because such testimony would be highly prejudicial.

Generally, under I.R.E. 404(b),[3] evidence of other crimes, acts or wrongs is inadmissible for the purpose of showing a person's character to prove that he or she acted in conformity therewith. *State v. Atkinson*, 124 Idaho 816, 818, 864 P.2d 654, 656 (Ct.App. 1993), *cert. denied*, 511 U.S. 1076, 114 S.Ct. 1659, 128 L.Ed.2d 376 (1994). Evidence of other crimes, wrongs or acts may be admitted, however, when relevant for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or the absence of mistake or accident. I.R.E. 404(b); *State v. Zimmerman*, 121 Idaho 971, 977, 829 P.2d 861, 867 (1992).

■ A two-tiered analysis is used to determine the admissibility of evidence concerning other crimes, wrongs or acts. *See Zimmerman*, 121 Idaho at 977–78, 829 P.2d at 867–68. First, the trial court must determine that the evidence is relevant. *Id.* Second, if the trial court finds that the evidence is relevant, it must then determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. I.R.E. 403; *Zimmerman*, 121 Idaho at 977–78, 829 P.2d at 867–68.

■ Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determina-

MITTEE NOTES, FED.R.EVID. 405; 22 WRIGHT AND GRAHAM, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 5262 (1978). Accordingly, Rule 405 does not provide an independent basis to admit character evidence, and we will not address it further.

tion of the action more probable or less probable than it would be without the evidence." I.R.E. 401; *State v. Johnson*, 126 Idaho 892, 896, 894 P.2d 125, 129 (1995). Whether evidence is relevant is an issue of law. *Atkinson*, 124 Idaho at 819, 864 P.2d at 657. Therefore, when considering a trial court's admission of I.R.E. 404(b) evidence, we exercise free review of the trial court's admissibility determination. *Id.* However, when reviewing the determination that the probative value of the evidence substantially outweighs the danger of unfair prejudice— the second tier of the analysis—we use an abuse of discretion standard. *Id.*

■ We first address whether the evidence of the arrest was relevant. According to the prosecutor, the officers' testimony was offered to provide evidence that based upon their experience, Dragoman had a "high functionability rate even though he [had] consumed alcohol, and in effect in some situations consumed large quantities of alcohol, and nevertheless [had] the functionability and behavior consistent with this particular situation." The district court, therefore, admitted the testimony for purposes of proving that Dragoman was capable of forming intent even though he was intoxicated.

We disagree with the district court's determination that testimony about Dragoman's conduct while intoxicated on previous occasions was relevant in the context of this case. Two of the three officers were not at the scene of Dragoman's arrest. There was no evidence establishing, beyond mere speculation, that Dragoman's intoxication level on prior encounters with these two officers was comparable to his intoxication level at the time of the conduct in question. The state argues that officer Hillier's testimony was admissible because he was able to observe Dragoman on previous occasions as well as at the time of the instant arrest. Officer Hillier, however, testified regarding Dragoman's reputation in the community regarding the consumption of alcohol, his observations of Dragoman's functionability when Dragoman had been heavily intoxicated, and his observations of Dragoman at the hospital where the BAC was taken. There was no testimony establishing a meaningful connection be-

tween the night in question and Dragoman's prior conduct involving the use of alcohol. Additionally, any testimony concerning Dragoman's reputation for the use of alcohol was not relevant in this particular case. Accordingly, it was error for the district court to admit these officers' testimony regarding Dragoman's conduct on prior occasions when he had consumed alcohol. It was also error to admit testimony concerning Dragoman's reputation in the community regarding his consumption of alcohol.

■ Even assuming, *arguendo*, that the evidence was relevant, it still must meet the Rule 403 balancing test. On review, we conclude that, under the circumstances, the officers' testimony of Dragoman's conduct while allegedly intoxicated on prior occasions and his functionability level on those occasions provided little, if any, probative value on his ability to form the necessary intent on the night in question. Moreover, considering the nature of the testimony, we conclude that there was a significant danger of unfair prejudice. Consequently, if the evidence was relevant, because the danger of unfair prejudice of the evidence substantially outweighed its probative value, we arrive at the same conclusion that the district court erred in admitting this testimony.

■ Next, we address whether the two errors discussed above were harmless. An error is harmless if, and only if, the appellate court is able to say, beyond a reasonable doubt, that the jury would have reached the same result absent the error. *State v. Boman*, 123 Idaho 947, 950–51, 854 P.2d 290, 293–94 (Ct.App.1993). The state argues that, because of the overwhelming evidence establishing that Dragoman "was not some bumbling drunk who was so intoxicated that he could not formulate an intent," it was harmless error to admit the officers' testimony. From the evidence established at trial, and the potential impact of the wrongfully admitted testimony, as well as the proposed expert testimony that was wrongfully excluded, we are not convinced beyond reasonable doubt that the jury would have reached the same result absent the errors. Thus, we hold that the district court's errors in admitting the officers' testimony and ex-

cluding the proposed expert's testimony were not harmless.

## III.

### CONCLUSION

We hold that the district court erred in refusing to allow Dragoman's expert to testify as to whether an average person with a BAC equivalent to Dragoman's could have formed the necessary intent to commit the offenses. We hold that the district court properly instructed the jury and that a separate instruction defining intent was unnecessary. We also conclude that the district court erred in admitting testimony regarding Dragoman's conduct on prior occasions when he had consumed alcohol and his reputation in the community for the use of alcohol. Finally, we conclude that these errors were not harmless. Accordingly, we vacate Dragoman's judgment of conviction, and we remand the case for a new trial.

WALTERS, C.J., and LANSING, J., concur.