759 P.2d 77

**Patricia Elizabeth KREBS, Plaintiff–Respondent–Cross Appellant,**

v.

**Harold Arthur KREBS, Defendant–Appellant–Cross Respondent.**

No. 16744.

Court of Appeals of Idaho.

July 7, 1988.

**572**

Lori P. Patton, Spokane, Wash., for defendant-appellant-cross respondent.

James H. Paulsen, Sandpoint, for plaintiff-respondent-cross appellant.

BURNETT, Judge.

This is an appeal by both parties from a district court decision affirming a magistrate's decree in a divorce action. The husband presents one issue: whether the magistrate erred in characterizing two tracts of real property as community property. On cross-appeal, the wife contends that the magistrate erred by concluding that she was not entitled to interest on an amount awarded to equalize a disparity in the property allocated to each party. For the reasons stated below, we affirm the district court's decision in part, reverse it in part, and remand the case for further proceedings.

This litigation commenced when Patricia Krebs sued for divorce after eighteen years of marriage. In her complaint she requested custody of the parties' five children, awards of child support and spousal maintenance, and a division of the couple's community assets and liabilities. Her husband, Harold A. "Arthur" Krebs, filed an answer and counterclaim in which he contested all of his wife's claims for relief—particularly her contention that the parties' real estate holdings consisted of community property. Subsequently Arthur moved for a summary judgment declaring that the real estate—consisting of two adjoining parcels of land, one of which included the couple's family farm—was his separate property. Arthur based his claim upon quitclaim deeds previously executed by Patricia to him for each of the two tracts. The magistrate determined that material issues of fact existed regarding the date and manner of acquisition of the two parcels, and regarding the circumstances surrounding the execution of the quitclaim deeds. Accordingly, he denied the motion and the matter proceeded to trial.

After listening to the testimony and evidence presented, the trial judge entered a decree dividing the parties' personal property and awarding child support and spous-

al maintenance.[1] The decree further characterized the two pieces of land as community property. The property was ordered sold, with the proceeds to be applied first to the community's debts. Following satisfaction of debts, Patricia was to be compensated for the discrepancy in the property awards. The disparity was relatively large because Arthur was awarded all of the parties' farm equipment. The decree fixed the difference precisely at $22,898. Finally, in a post-trial order the magistrate denied Patricia's motion for statutory interest on the amount awarded to equalize the property awards.

On appeal to the district court, Arthur challenged the decree in its entirety. Patricia cross-appealed on the question of statutory interest. With the exception of its decision regarding spousal maintenance, the district court affirmed the magistrate's decree on all points. Arthur appealed to this Court, challenging the magistrate's characterization of the real property. On cross-appeal, Patricia has reasserted her claim for statutory interest.

## I

We first discuss the characterization of the two parcels of land. The first parcel, known as the Grouse Creek property, is a 160–acre tract consisting of the family farm and homestead. The second parcel is an adjoining thirteen-acre lot known as the Van Ooyen property, which was purchased by the couple in 1976. Arthur contends that both of these pieces of land are his separate property. He asserts that he obtained title to the Grouse Creek property in 1961, four years before his marriage, by virtue of a quitclaim deed executed by his father to him.[2] He further asserts that as a result of this 1961 conveyance, the execution of a 1969 warranty deed to the same property from his father to himself and Patricia Krebs as husband and wife was of no effect. Finally, Arthur urges that any effect of the 1969 conveyance is moot because quitclaim deeds to both parcels were executed by Patricia in 1980 and 1981, vesting sole title in him and extinguishing any claim that Patricia may have had.

Patricia denies the existence of a 1961 quitclaim deed from father to son. Rather, she maintains that the true conveyance was in 1969, vesting title in the community. Finally, she contends that her signatures on the 1980 and 1981 quitclaim deeds were procured through fraud and undue influence by Arthur.

The magistrate found insufficient evidence supporting Arthur's assertions regarding the 1961 transfer. In addition, he determined that the 1980 and 1981 quitclaim deeds had been obtained through fraud and undue influence, as Patricia contended. Accordingly, he concluded that the warranty deed executed by Arthur's father to the couple in 1969 remained valid. Similarly, he determined that a 1976 deed to the Van Ooyen property remained in effect. As a result, the magistrate ruled that both parcels were community property.

## A

Our analysis begins by noting the standard of appellate review appropriate to classifications of assets as community or separate property. Such determinations involve mixed questions of law and fact. Accordingly, our review is bifurcated. *Cf. McAtee v. Faulkner Land & Livestock, Inc.,* 113 Idaho 393, 744 P.2d 121 (Ct.App. 1987) (review of determination of abandonment of water rights). The manner and method of acquisition of property, as well as the parties' treatment of that property, are questions of fact. We defer to the magistrate's findings on these issues when they are supported by substantial evidence.

---

1. Patricia remarried the day the court's decree was entered. Approximately two months later, Arthur moved to terminate payments of spousal maintenance. The motion was granted, but the magistrate refused to apply his ruling retroactively to the date of the remarriage. On appeal, the district court reversed, voiding all spousal support payments from the date of Patricia's new marriage. Neither party contests this determination in the present appeal.

2. All property of a husband or wife acquired before marriage remains his or her sole or separate property. *See* I.C. § 32–903. All other property acquired after marriage is community property. *See* I.C. § 32–906.

*Lang v. Lang*, 109 Idaho 802, 711 P.2d 1322 (Ct.App.1985). However, characterizing an asset as separate or community property, in light of the facts found, is a question of law over which we exercise free review. *Id.* With these principles in mind we now analyze the classification of the two parcels of land.

B

■ Arthur first contends that the magistrate erred in finding that he had failed to establish the purported 1961 quitclaim to him from his father. At trial, Arthur and his father both testified that the father had executed and delivered a deed to Arthur in 1961.[3] Other than these bare assertions, little evidence was presented to support this claim. The purported deed was never recorded. Nor was a copy of the deed ever produced at trial. Arthur stated that he apparently had misplaced the deed many years earlier but had discovered its loss only two weeks before trial.

County records indicated that the father, not Arthur, had paid property taxes and mortgage payments on the Grouse property for several years after 1961. In 1968 Arthur began making the property tax payments. In 1969 the father conveyed the property to Arthur and Patricia, as husband and wife, for $16,000. Patricia testified that Arthur had never mentioned any previous dealings between himself and his father.

The magistrate concluded that the testimony of Arthur and his father lacked credibility. The magistrate found it peculiar that Arthur had only noticed the 1961 deed to be missing shortly before trial, even though he presumably would have wanted to produce it in support of his earlier summary judgment motion. The magistrate determined that because the only extant deed was executed after the parties were married, the Grouse Creek property was presumptively community property and that Arthur had failed to present sufficient credible evidence to the contrary.

However, there was one item of evidence which, as the magistrate acknowledged, tended to support Arthur's version of events. A copy of a 1968 probate decree, entered following the death of Arthur's mother, was introduced. It referred to Arthur as owner of the Grouse Creek property.[4] The magistrate found the document vague, inconclusive, and unpersuasive as proof of the lost 1961 deed.

The existence of a lost deed is a question of fact provable by extrinsic evidence. *Johnson v. Johnson*, 74 N.M. 567, 396 P.2d 181 (1964). The proponent of such a deed bears a stiff burden. He must present clear and convincing evidence of its execution, delivery and contents. *Hardine v. Pioneer National Title Insurance*, 145 Ariz. 83, 699 P.2d 1314 (Ct.App.1985). On this question, like any question of fact, an appellate court, in turn, will not disturb findings of fact by a trial court unless they are clearly erroneous. I.R.C.P. 52(a). Where, as here, witnesses present contradictory testimony—and the case becomes a credibility contest—we defer to the trial court's determination of credibility. *Id.*

We will not substitute our judgment for the magistrate's findings in this case. In our view, the magistrate did not clearly err

3. The magistrate found it noteworthy that although the father did remember the purported 1961 transaction, he professed no recollection of the 1969 conveyance, even though a copy of the purchase money check—endorsed by him— was produced at trial for his inspection.

4. The decree provided, in pertinent part:
  IT IS FURTHER ORDERED, ADJUDGED AND DECREED That the following described real property, to-wit:
   Governments Lots 3 and 4 and the South one-half of the Northwest one-quarter of Section 2, Township 58 North Range 1 West of the Boise Meridian

which stands in the records of Bonner County, Idaho, as the property of Alfred R. Krebs and Florence D. Krebs, the above named decedent, is in actuality the property of their son, Arthur Krebs, and that title was placed in their name so that their property, and the above described property, could be combined and used as collateral for a loan to purchase the above described property of Arthur Krebs, and that the estate of Florence D. Krebs has no actual interest in the said property, and the Quit Claim Deed from Alfred R. Krebs to Arthur Krebs is sufficient to clear title to the same into the name of Arthur Krebs.

in his assessment of the credibility of the testimony or in his refusal to ascribe great weight to the cryptic probate decree. Accordingly, we leave the magistrate's findings undisturbed.

## C

Arthur next argues that even if the 1961 conveyance is disregarded, he holds title to both pieces of property by virtue of the quitclaim deeds executed by Patricia in 1980 and 1981. Patricia argues that she was induced to quitclaim her interest by her husband's artifice. She claims that she did not understand what she was doing and that her will was overborne by her husband, causing her to sign both documents even though she never intended to divest her entire interest in the bulk of the couple's estate. The magistrate found fraud and undue influence. Because the issue of undue influence is dispositive, we need not discuss the question of fraud.

▮ If a grantor is unduly influenced, he or she does not have the requisite intent to execute a deed. The deed is voidable. *See generally* 23 AM.JUR.2D, *Deeds* § 203 (1983). A prima facie case of undue influence consists of four elements: (1) a grantor who is subject to influence; (2) an opportunity to exert undue influence; (3) a disposition to exert undue influence; and (4) a result indicating undue influence. *Gmeiner v. Yacte,* 100 Idaho 1, 592 P.2d 57 (1979). Whether improper influence has been exercised must usually be inferred from circumstantial evidence. *Id.* Factors to be considered include the age and physical and mental condition of the grantor, whether he or she received disinterested advice in the transaction, the providence or improvidence of the decision, the amount or adequacy of consideration for any contract made, distress of the person influenced, his or her predisposition to make the transfer in question, the extent of the transfer in relation to his or her whole worth, failure to provide for one's children in the event of a transfer, active solicitation by the grantee, and the relationship of the parties. *Id.*

▮ Normally, the party asserting that a deed was procured by means of undue influence has the burden of proving such influence. *McNabb v. Brewster,* 75 Idaho 313, 272 P.2d 298 (1954). However, if the person alleging undue influence can first produce evidence that the parties to the transaction occupied a confidential relationship, and that the grantee was the dominant spirit in the transfer, a rebuttable presumption of undue influence arises, which the proponent of the transaction must refute. *Bongiovi v. Jamison,* 110 Idaho 734, 718 P.2d 1172 (1986). This principle is consonant with the general rule regarding presumptions enunciated in I.R.E. 301.

> [A] presumption imposes on the party against whom it is directed the burden of going forward with the evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

A Rule 301 presumption relieves the party in whose favor it operates from presenting further evidence of the presumed fact until the opposing party introduces substantial evidence of the nonexistence of the fact. *Bongiovi v. Jamison, supra.* Thus, in the present case, if Patricia introduced evidence demonstrating that a confidential relationship existed and evidence that Arthur was instrumental in procuring the deed, then the burden would shift to Arthur to come forward with evidence tending to disprove at least one of the four prima facie elements of undue influence.

▮ Here, Patricia's testimony was more than adequate to invoke a presumption of undue influence. A husband and wife occupy a confidential relationship as a matter of law. 23 AM.JUR.2D *Deeds,* § 205 (1983). She testified further—and Arthur agreed—that it was he who on both occasions sought the services of an attorney and asked Patricia to execute the necessary documents. But this was not all of the evidence adduced at trial. The trial court found that Patricia never obtained independent counsel before signing. Rather, she explained that she did so hurriedly because Arthur told her that their property could be

jeopardized if the couple were ever sued because of certain illegal activities of her son by a prior marriage. Arthur told her that quitclaims were necessary to protect the family home and the Van Ooyen property. The magistrate also found that although Patricia received no consideration for the deeds, she did not intend to make a gift or entirely to relinquish her interest in the properties. Finally, the magistrate noted that Patricia had no business knowledge and "was kept in the dark about financial matters by [Arthur]; was not permitted to write checks by [Arthur]; and did not have access to any money. As between [the two] the Court would find that [Arthur] was the financial manager of the community."

In rebuttal Arthur simply denied that he had attempted to coerce his wife and instead maintained that Patricia wished to rid herself of any business with him because she wanted to obtain a divorce. The magistrate found otherwise. We believe the finding is not clearly erroneous; indeed, we see no logical reason why Patricia would have wished to divest herself and her heirs, including her son, of her most valuable assets without receiving anything in return. We further uphold the magistrate's conclusion that the 1980 and 1981 deeds, being tainted by undue influence, were voidable.

## II

■ On cross-appeal, Patricia contends that she is entitled to statutory interest on the $22,898 awarded from proceeds of the sale of the real property, as compensation for the differential in the trial court's personal property awards. The magistrate denied a post-trial motion for statutory interest. The district court upheld this decision on appeal. We now reverse.

By conditioning payment of this sum to the wife upon a future sale of the real property, the trial court actually deferred payment of a money judgment. Apparently both the magistrate and the district court interpreted the claim as being one for interest on the as-yet unliquidated proceeds from the land sale. We view it differently.

The proceeds from this sale were simply the means of satisfying the judgment. Although the dollar figure established represented the disparity between the appraisal value of non-cash assets—the parties' personal property—the difference was to be covered in cash. This judgment was, therefore, at least in part a money judgment. Money due on the judgment of any competent tribunal would bear interest at a rate provided in I.C. § 28–22–104(2). We see no cogent reason why interest on this sum should not be awarded.

Furthermore, equity weighs in favor of the award. While the property remains unsold, Arthur stays in possession and retains the benefit of the presently unequal property distribution. There is no reason why Arthur should have the use of his wife's award without payment of interest. *Accord Lawson v. Lawson,* 87 Idaho 444, 394 P.2d 1008 (1964) (allowing interest on deferred property settlement). *See also Ovens v. Ovens,* 61 Wash.2d 6, 376 P.2d 839 (1962).

■ Finally, Patricia requests attorney fees on appeal pursuant to I.C. § 12–121. She asserts that Arthur's appeal was brought frivolously and without foundation. We agree. This appeal has presented no meaningful issue on a question of law. Furthermore, Arthur merely has disputed the trial court's factual findings by pointing to conflicts in the evidence. When a trial court's findings are supported by substantial evidence, the mere existence of other, conflicting evidence does not establish that the findings are clearly erroneous. *T–Craft Aero Club, Inc. v. Blough,* 102 Idaho 833, 642 P.2d 70 (Ct.App.1982). An appeal should do more than invite the appellate court to second-guess the trial court on conflicting evidence. Absent a clear showing of error, we will not invade the trial court's domain. *Id.* We are left with the abiding belief that this appeal was brought without foundation. Accordingly, we hold that Patricia is entitled to an award of a reasonable attorney fee on appeal, to be determined under I.A.R. 41. Our holding applies, of course, only to the fees incurred by Patricia in defending

against Arthur's appeal and not to those fees incurred in bringing her own appeal. Her appeal, we think, presented a fairly debatable question on which Arthur did not frivolously defend.

The judgment of the trial court is affirmed in part, reversed in part and remanded for proceedings consistent with this opinion. Costs and attorney fees, as noted above, to respondent.

WALTERS, C.J., and SWANSTROM, J., concur.