30 P.3d 988

**STATE of Idaho, Plaintiff–Respondent,**

v.

**James EYTCHISON, Defendant–Appellant.**

No. 26525.

Court of Appeals of Idaho.

July 9, 2001.

the jury found Eytchison guilty of four counts of lewd conduct with a minor under the age of sixteen and acquitted Eytchison of the remaining two counts. The district court sentenced Eytchison to unified terms of thirty years, with seven years fixed. The district court ordered that the first two terms would run concurrent with each other and that the second two terms would run concurrent with each other and consecutive to the first two terms. Thus, the district court sentenced Eytchison to an aggregate term of sixty years, with fourteen years fixed. Eytchison appeals, challenging the admission of trial testimony of three witnesses and the propriety of a single jury instruction.

## II.

## ANALYSIS

### A. Yeager's Expert Opinion

█ Eytchison argues on appeal that the district court abused its discretion in allowing Mydell Yeager to testify as an expert that it was her opinion that the victim in the instant case was sexually abused. Eytchison contends that the state failed to lay an adequate foundation showing that Yeager was qualified to give such an opinion. When a trial court's decision to admit expert testimony is challenged on appeal, we review the decision for an abuse of discretion. *State v. Merwin*, 131 Idaho 642, 645–46, 962 P.2d 1026, 1029–30 (1998); *State v. Konechny*, 134 Idaho 410, 414, 3 P.3d 535, 539 (Ct.App.2000).

█ The admissibility of expert testimony is governed by Idaho Rule of Evidence 702, which provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."[1] The

Davison, Copple, Copple Copple, Boise, for appellant. Jon R. Cox argued.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

PERRY, Judge.

James Eytchison appeals from his judgment of conviction and sentences for four counts of lewd conduct with a minor under the age of sixteen. We vacate the judgment and remand for a new trial.

## I.

## BACKGROUND

In August 1999, James Eytchison was charged by indictment with six counts of lewd conduct with a minor under the age of sixteen. I.C. § 18–1508. The charges stemmed from allegations regarding sexual misconduct between Eytchison and his daughter when she was eleven, fourteen, and fifteen years old. At the conclusion of a trial,

---

1. Prior to December 1, 2000, Federal Rule of Evidence 702 was identical to its Idaho counterpart. As of that date, however, F.R.E. 702 was amended as follows:

 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

 Federal Rule of Evidence 702 was amended in response to the decisions of the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and its progeny. *See*

five sources of expert qualifications identified in the rule, knowledge, skill, experience, training, or education, are disjunctive. *Konechny*, 134 Idaho at 414, 3 P.3d at 539; *State v. Hopkins*, 113 Idaho 679, 681, 747 P.2d 88, 90 (Ct.App.1987). Therefore, academic training is not always a prerequisite to be qualified as an expert; practical experience or specialized knowledge may be sufficient.[2] *Konechny*, 134 Idaho at 414, 3 P.3d at 539. However, there must be some demonstration that the witness has acquired, through some type of training, education or experience, the necessary expertise and knowledge to render the proffered opinion. *Konechny*, 134 Idaho at 414, 3 P.3d at 539. A witness may be qualified to render opinions about some things but not others. *West v. Sonke*, 132 Idaho 133, 139, 968 P.2d 228, 234 (1998).

■ A foundational showing of expertise to render an opinion that a victim was sexually abused requires more than general education and expertise in mental health counseling. *Konechny*, 134 Idaho at 416, 3 P.3d at 541. Whenever an alleged victim's treating therapist or counselor is called to express such an opinion, the trial court must be careful to scrutinize whether a foundation has been offered to show that the witness's expertise is not merely in treatment but in the determination of whether the child was actually sexually abused. *See id.* The witness must possess expertise in "the art or science of divining whether a child who has made allegations of sexual touching has in fact been abused." *Id.* at 417, 3 P.3d at 542.

■ The following factors suggest the scope of the qualifications which trial courts should look for when a litigant offers an expert opinion as a diagnostician of sexual abuse: (1) whether the expert possessed specialized knowledge of child development, individual and family dynamics related to sexual abuse, patterns of child sexual abuse, the effects of sexual abuse on a child, the disclosure process, the use and limits of psychological tests, and the significance of developmentally inappropriate sexual knowledge; (2) whether the expert is trained in the interpretation of medical reports or laboratory tests, in the art of interviewing children, and in the diagnostic evaluation of both children and adults; (3) whether the expert is familiar with the literature on child abuse and on coached and fabricated allegations of abuse; and (4) whether the expert has clinical experience with sexually abused children. *See id.* at 416, 3 P.3d at 541.

The foundational evidence offered by the state at trial centers on Yeager's qualifications as a counselor. Yeager testified that she is a licensed professional counselor with a private practice clinic designation in Idaho and that she completes numerous hours of continuing education each year to maintain the license. Yeager testified that she possesses a master's degree in counseling, has worked as a counselor for over fifteen years, has spent the last four years treating children subjected to sexual abuse, and has counseled over one thousand children. Yeager also testified that she is a member of the Idaho Counseling Association and the Idaho Mental Health Counselor's Association and that she is a nationally certified counselor. Yeager testified that she has also taught a series of college classes.[3]

Although this testimony shows that Yeager is highly qualified to treat and to counsel victims of child sex abuse, it does not reveal whether Yeager is skilled in diagnosing whether a particular child has been a victim of sexual abuse. On direct examination, Yeager was asked whether she had received any specialized training with regard to treating and recognizing behavior and emotional characteristics associated with child abuse. Yeager responded, "Well, when you do gen-

Advisory Committee Notes, F.R.E. 702. "The amendment affirms the trial court's role as gatekeeper and provides some general standards that the trial court must use to assess the reliability and helpfulness of proffered expert testimony." *Id.*

2. The Advisory Committee Notes to the amended F.R.E. 702 states: "If a witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." The more subjective and controversial the expert's inquiry, the more likely the testimony should be excluded as unreliable. *Id.*

3. The curriculum of these classes was not specified.

eral training in sexual abuse, there isn't a whole lot of training on that." Yeager also testified that her opinion was based upon *counseling* children in her practice. On cross-examination, Yeager specifically stated that she does not conduct any sort of diagnostic testing for purposes of evaluating her patients. Yeager further explained, "I'm doing therapy so my job is to heal and I don't know that I always have to form an opinion."

Based upon Yeager's testimony, we conclude that the state failed to demonstrate that Yeager had acquired, through some type of training, education or experience, the expertise necessary to diagnose whether a child who has made allegations of sexual abuse has in fact been abused. Consequently, the district court erred in finding there was sufficient foundation to admit Yeager's opinion that the victim in the instant case was sexually abused.[4]

■■■ This Court must now determine whether the error in admitting Yeager's opinion was harmless. *See Konechny,* 134 Idaho at 420, 3 P.3d at 545. Any error or irregularity in the admission of evidence which does not affect the defendant's substantial rights must be disregarded. I.C.R. 52. To determine whether the error affected the defendant's rights or was harmless, an appellate court asks whether it appears, beyond a reasonable doubt, that there was no reasonable possibility that the error contributed to the conviction. *Konechny,* 134 Idaho at 420, 3 P.3d at 545. After reviewing the record, we are unable to conclude beyond a reasonable doubt that the jury would have found Eytchison guilty had Yeager's opinion been excluded. The victim alleged that Eytchison forced her on numerous occasions to perform oral sex. Because of the nature of the abuse, a medical examination of the victim was never completed. Eytchison denied the victim's accusations and suggested that the victim was a disobedient child who fabricated the accusations in an attempt to leave her home. Thus, the case turned upon the credibility of the witnesses. The jury may have been swayed toward its finding of guilt by Yeager's opinion, which bolstered the vic-

tim's credibility. *See Konechny,* 134 Idaho at 420, 3 P.3d at 545; *State v. Johnson,* 119 Idaho 852, 859, 810 P.2d 1138, 1145 (Ct.App. 1991). Consequently, we must vacate Eytchison's judgment of conviction and sentences for four counts of lewd conduct with a minor under the age of sixteen. This case is remanded for a new trial. To the extent necessary to provide guidance on remand, we will address additional issues raised by Eytchison on appeal.

## B. Vinson's Expert Opinion

■■■ Eytchison also argues that the district court abused its discretion in allowing Suzie Vinson to testify as an expert regarding delayed disclosure. Vinson, who is a caseworker with the Idaho Department of Health and Welfare, testified as follows:

> My opinion in general is I find [delayed disclosure] very common in cases that I personally worked with over the years.
>
> . . . .
>
> There is a lot of guilt on the part of the children of disclosing, obviously a lot of disruption in families, the fear of having a parent go to jail, fear of losing a loved one or parent, the fear of living in a home that they have never been in before such as foster care.

Eytchison contends that the state failed to lay an adequate foundation showing that Vinson was qualified to give such an opinion.

The foundational evidence offered by the state at trial reveals that Vinson has worked as a social worker for twenty-six years and is currently employed as a caseworker with the Adolescent Services Unit of the Idaho Department of Health and Welfare. Vinson testified that she has worked on hundreds of child abuse cases. Vinson testified that her responsibilities as a caseworker include assessing whether a child should be removed from her home pending an adjudicatory hearing, assisting children in the transition to foster care, and referring children and families to counseling. Vinson also testified that she has received specialized training as it

---

4. Based on this conclusion, we find it unnecessary to consider Eytchison's argument that the state failed to show a sufficient foundation for the methodology used by Yeager in forming her opinion. On remand, the district court should take into account the foundational standards expressed in *Konechny.*

relates to delayed disclosure in child sexual abuse cases.

This foundational evidence shows that Vinson has personally worked with hundreds of children that have been sexually abused. Vinson has personal knowledge regarding whether each individual child waited to disclosure the abuse. Although Vinson may not be qualified to generalize about all sexually abused children, she is qualified to offer an expert opinion regarding how common delayed disclosure is among those children with whom she has personally worked. Based upon her experience, personal knowledge, and specialized training, Vinson is also qualified to offer an expert opinion regarding why the children with whom she has worked delayed disclosing the sexual abuse. Because Vinson did not testify as to matters beyond her demonstrated expertise, we conclude that the district court did not abuse its discretion in admitting Vinson's expert opinion regarding delayed disclosure.

### B. Hettenbach's Testimony

 At trial, Marlene Hettenbach testified regarding an incident that occurred when she was riding as a passenger in Eytchison's vehicle when she was twenty-one years old.[5] Hettenbach testified that Eytchison forced her to place her hand on his penis and that Eytchison attempted to force her to perform oral sex. On appeal, Eytchison argues that the district court abused its discretion in allowing Marlene Hettenbach to testify regarding the incident. Eytchison contends that the testimony was admitted in violation of I.R.E. 404(b) and I.R.E. 403.

 To determine the admissibility of prior uncharged bad acts, the trial court is required to engage in a two-tiered analysis. The district court must first inquire whether under I.R.E. 404(b) the evidence is relevant to an issue other than character or propensity. *State v. Tapia*, 127 Idaho 249, 254, 899 P.2d 959, 964 (1995); *State v. Whipple*, 134 Idaho 498, 504, 5 P.3d 478, 484 (Ct.App.2000); *State v. Canelo*, 129 Idaho 386, 393, 924 P.2d 1230, 1237 (Ct.App.1996). This Court exercises free review over a trial court's determination of the testimony's relevance because

relevancy is neither a factual issue nor a matter of judicial discretion. *Whipple*, 134 Idaho at 504, 5 P.3d at 484. Under Rule 404(b), evidence of uncharged misconduct is generally inadmissible when offered as evidence of the defendant's bad character. I.R.E. 404(b); *State v. Hairston*, 133 Idaho 496, 501, 988 P.2d 1170, 1175 (1999); *State v. Moore*, 120 Idaho 743, 745, 819 P.2d 1143, 1145 (1991). Such evidence may be admissible when introduced for other purposes such as proof of motive, intent, plan, knowledge, and identity. I.R.E. 404(b). In addition, evidence offered for the purpose of impeachment may be admissible although not specifically listed in Rule 404(b). *Hairston*, 133 Idaho at 501, 988 P.2d at 1175.

 Even if relevant to a permissible purpose, evidence of uncharged misconduct is subject to exclusion under I.R.E. 403 if its probative value is substantially outweighed by the danger of unfair prejudice. *Hairston*, 133 Idaho at 501, 988 P.2d at 1175; *Tapia*, 127 Idaho at 254, 899 P.2d at 964; *Moore*, 120 Idaho at 745, 819 P.2d at 1145; *Whipple*, 134 Idaho at 504, 5 P.3d at 484; *Canelo*, 129 Idaho at 393, 924 P.2d at 1237. The determination of whether the risk of unfair prejudice substantially outweighs the probative value of the evidence is within the discretion of the trial court. *State v. Porter*, 130 Idaho 772, 784, 948 P.2d 127, 139 (1997); *Whipple*, 134 Idaho at 504, 5 P.3d at 484.

In the instant case, the state filed a motion in limine seeking to present at trial Hettenbach's testimony regarding two incidents of sexual misconduct committed by Eytchison. The first incident allegedly occurred when Hettenbach was thirteen years old and Eytchison grabbed her breasts. The second incident allegedly occurred when Hettenbach was twenty-one years old and is described above. Eytchison filed a motion in limine seeking to exclude Hettenbach's testimony. After considering the motions, the district court granted Eytchison's motion in as far as the state might use the testimony in its case in chief. However, the district court explained, "Whether or not such evidence would be relevant on cross-examination or in

---

5. Hettenbach was twenty-eight years old at the time of trial. Eytchison was married to Hetten-bach's sister at the time of the incident described by Hettenbach.

rebuttal depends upon the Defendant's testimony on direct examination."

At trial, Eytchison chose to testify in his defense. The following colloquia occurred during cross-examination of Eytchison regarding visits he had made to see his daughter after she was removed from his home:

[State] Do you remember being told by Suzan Vinson you shouldn't touch [the victim] during these visits anymore?

. . . .

[Eytchison] You said touch. I didn't say anything about touch. Touching makes it sound like I was groping her.

[State] You wouldn't grope her?

[Eytchison] No, I wouldn't grope any child.

[State] Ever?

[Eytchison] Ever.

[State] You would never sexually touch another child ever?

[Eytchison] No.

Based upon this testimony, the district court concluded that Eytchison opened the door for the state to admit Hettenbach's testimony. The district court found that evidence of the first incident was relevant because it directly impeached Eytchison's statement that he would never sexually touch or grope another child. The district court found that evidence of the second incident was also relevant:

I think it's relevant in that even though she was 21 at that time, it shows a continuation of the sexual groping and touching with this specific victim that began when she was a child. And so I think it's relevant as to whether or not he would be groping other children because he began groping her when she was a child and continued to do that allegedly into the period of time covered by the allegations in this case with respect to [the victim].

On appeal, Eytchison contends that the district court abused its discretion in allowing Hettenbach to testify regarding the second incident when she was twenty-one years old because the testimony was not relevant for impeachment purposes.[6]

Hettenbach's testimony was introduced at trial to impeach Eytchison's statement that

he would never grope or sexually touch another child. Although evidence of uncharged misconduct may be admitted for impeachment purposes, the evidence must be relevant to the impeachment. *See Hairston*, 133 Idaho at 501, 988 P.2d at 1175; *Openshaw v. Adams*, 92 Idaho 488, 495, 445 P.2d 663, 670 (1968). Without regard to the first incident, evidence of the second incident is not relevant to contradict or impeach Eytchison's statement because the second incident involved an adult and not a child. Nevertheless, the district court found that the second incident was relevant because it was a "continuation" of the groping and sexual touching that began with the first incident. This Court must defer to the findings of fact of the trial court if based upon substantial evidence. *State v. Dorr*, 120 Idaho 441, 443, 816 P.2d 998, 1000 (Ct.App.1991). A review of Hettenbach's testimony reveals that there was an eight-year time period between the first incident when Hettenbach was a child and the second incident when Hettenbach was an adult. However, there is no evidence regarding any misconduct during the eight-year period. We conclude that there was insufficient evidence to support the district court's finding that the second incident was a continuation of the first incident. Consequently, the district court erred in concluding that the second incident was relevant to contradict or impeach Eytchison's testimony.

### C. Jury Instructions

 Instructions 10 to 15 delineated the elements for the six counts of lewd conduct with which Eytchison was charged. These instructions substantially complied with I.C.J.I. 929 and conformed to the charges raised in the indictment. Instructions 10 to 15 specifically informed the jury that the state must prove that each count happened "on or about" a certain two or three month time period. Nevertheless, instruction 16 stated the following:

In each count, it is alleged that the crime charged was committed "on or about" a range of dates. If you find the

---

6. Eychison does not challenge the district court's decision to admit Hettenbach's testimony regard-

ing the incident when she was thirteen years old.

crime charged was committed, the proof need not show the specific date upon which it was committed, nor need it show that it was committed within that range of dates alleged. It need only show that the crime was committed before [the victim] turned sixteen years of age.

On appeal, Eytchison contends that the last sentence of instruction 16 effectively eliminated the "on or about" language from the six counts of lewd conduct and thereby caused a variance between the indictment and the jury instructions. Eytchison contends that he was prejudiced by the variance.

■ The question of whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Gleason*, 123 Idaho 62, 65, 844 P.2d 691, 694 (1992). When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *State v. Bowman*, 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct.App.1993).

When considered in union with the remaining jury instructions, the last sentence of instruction 16 does not eliminate the "on or about" language from instructions 10 to 15. Rather, instruction 16 further defines the term "on or about" and reiterates the law in Idaho that time is not a material ingredient in the offense of lewd conduct with a minor. *See State v. Roberts*, 101 Idaho 199, 200, 610 P.2d 558, 559 (1980). Thus, we conclude that there was no variance between the indictment and the jury instructions in the instant case. The jury instructions, when considered as a whole and not individually, fairly and accurately reflect the law applicable to the charges against Eytchison.

■ Nevertheless, we note that ordinary words used in the sense in which they are commonly understood need not be defined in jury instructions. *See State v. Zichko*, 129 Idaho 259, 264, 923 P.2d 966, 971 (1996); *State v. Gonzales*, 92 Idaho 152, 158, 438 P.2d 897, 903 (1968); *State v. Gomez*, 126 Idaho 700, 705, 889 P.2d 729, 734 (Ct.App.1994); *State v. Greensweig*, 102 Idaho 794, 799, 641 P.2d 340, 345 (Ct.App.1982). The preface to the Idaho Criminal Jury Instructions endorses this general rule and suggests that caution and restraint should be exercised in provid-

ing definitional instructions beyond those expressed by statutory declaration. *See also State v. Dragoman*, 130 Idaho 537, 544, 944 P.2d 134, 141 (Ct.App.1997). Consequently, the Idaho Criminal Jury Instructions do not contain an instruction defining the term "on or about." *See Id.* Although not error, we conclude that instruction 16 was unnecessary in the instant case because the meaning of the term "on or about" is a matter of common understanding.

## III.

## CONCLUSION

Based upon the foregoing, Eytchison's judgments of conviction and sentences for four counts of lewd conduct with a minor under the age of sixteen are vacated, and the case is remanded.

Judge LANSING and Judge Pro Tem GUTIERREZ, concur.