50 P.3d 975

THORN SPRINGS RANCH, INC.,
an Idaho corporation, Plaintiff–
Counterdefendant–Appellant,

v.

Deryl SMITH, Defendant–
Counterclaimant–
Respondent,

Deryl Smith, Third–Party Plaintiff,

v.

Glen Tabor and Bernadine A. Tabor, husband and wife; Danny S. Smith and Lori Miller, husband and wife, individually; and Danny S. Smith, Bernadine A. Tabor and Rosemary E. Ray, as officers, directors and shareholders of Thorn Springs Ranch, Inc., an Idaho corporation, Third–Party Defendants.

Thorn Springs Ranch, Inc., an Idaho
corporation, Plaintiff–
Counterdefendant,

v.

Deryl Smith, Defendant–Counterclaimant.

Deryl Smith, Third–Party Plaintiff–
Respondent,

v.

Glen Tabor and Bernadine A. Tabor, husband and wife; Danny S. Smith and Lori Miller, husband and wife, individually, Third–Party Defendants–Appellants,

and

Danny S. Smith, Bernadine A. Tabor, and Rosemary E. Ray, as officers, directors and shareholders of Thorn Springs Ranch, Inc., an Idaho corporation, Third–Party Defendants.

Nos. 27128, 27205.

Supreme Court of Idaho,
Boise, May 2002 Term.

July 2, 2002.

Baker & Harris, Blackfoot, for appellant Thorn Springs Ranch, Inc. and for appellants Glen and Bernadine A. Tabor, Danny S. Smith, and Lori Miller. Dwight E. Baker argued.

Herzog & Roche, Pocatello, for respondent Deryl Smith.

KIDWELL, Justice.

This is an appeal from a decree of specific performance resulting from an oral agreement for the conveyance of land. We affirm the district court's decision.

## I.

### FACTS AND PROCEDURAL BACKGROUND

Clarence Smith owned a 600–acre ranch, which he transferred in 1976 to his five children: Rosemary Ray, Bernadine Tabor, Susan Slayton, Dan Smith, and Deryl Smith. The siblings did not get along. From 1976 to 1990, the ranch was operated as a partnership. The district court found that there had been discussions between the siblings and their father that each of the children would be entitled to a five-acre parcel from the ranch. The discussions were never put in writing. In 1990, Susan sold her interest in the ranch and any claim to a five-acre parcel to her siblings, who incorporated as Thorn Springs Ranch, Inc. (Thorn Springs). Each sibling had equal shares in the corporation.

Deryl lived on the ranch on five acres, known as the homestead, for approximately fifteen years. In 1998, Deryl approached Dan, wanting to sell his interest in the corporation. Deryl began discussions with the neighboring farming family, the Thompsons, about buying his interest in Thorn Springs. The corporation had a first right of refusal, and did not wish to sell to someone outside the family. The Thompsons were interested in the property, and had negotiated a proposal with Deryl. Different shareholders and Glen Tabor (Glen), Bernadine's husband, spoke with the Thompsons in a successful effort to discourage their interest in the property. Deryl sent Thorn Springs a letter on February 12, 1998, containing his sales proposal. Although Thorn Springs alleged Deryl did not follow the corporation's bylaws, it still considered his offer and began preparing a counteroffer to present to Deryl. It was decided that Glen should act as the corporation's representative in discussions with Deryl. The minutes of the annual shareholders' meeting on February 17, 1998, state "Dan, Rosemary and Bernadine asked

Glen to represent the Ranch and negotiate with Deryl the buyout of his interest in the ranch." From the outset, Glen made it clear to Deryl that Deryl was to negotiate the sale of his interest with Glen only and not with Deryl's siblings.

Glen and Deryl discussed the possible sale by Deryl of his interest in the corporation to Thorn Springs for a sale price between $150,000 and $200,000, as well as a possible reservation of five acres for Deryl. The district court found that Deryl repeatedly told Glen that he wanted to keep the five acres he had lived on for the previous fifteen years. On May 7, 1998, Thorn Springs sent Deryl a written proposal (the May 7th proposal) offering him $150,000, and stating, "the sale price is offered in lieu of all other considerations." It also stated, "the offer will be withdrawn 48 hours after it is extended if there is no favorable response from Deryl." Glen followed the May 7th proposal with a telephone call to Deryl on May 11, 1998. Deryl signed the May 7th proposal on May 15, 1998. However, Glen and Deryl still continued to negotiate the terms of the sale. On May 18, 1998, Glen and Dan made arrangements with the surveyor Harper–Leavitt to plot the boundary lines on three five-acre parcels. Glen asserts that in a different conversation on May 18, 1998, he explained to Deryl that the surveyors would be out to the ranch to plot the three five-acre parcels for Dan, Bernadine, and Rosemary. The district court found that at some point in the discussions, Glen told Deryl that he and Bernadine did not want a five-acre parcel.

On May 21, 1998, Deryl sent Glen a "drop dead" letter, telling him that he refused to sell his interest for $150,000 and give up the five acres upon which he had lived for fifteen years. He also drew a detailed sketch of the five acres he wanted, acknowledging that, as drawn, the parcel might be less than five acres. That same day, Deryl and Glen had another telephone conversation. The district court found that Deryl reiterated that he either wanted his five acres or he wanted an additional $60,000, which represented the fair market value of the five acres. Deryl assumed that Glen would convey his demands to the shareholders for a decision. Glen and

Deryl had another conversation on May 25, 1998, during which Glen told Deryl, "it looks like you're going to get your five acres." This statement has been disputed during this litigation.

Glen had counsel for Thorn Springs, Tom Moss (Moss), draw up the final agreement, which was signed by Deryl and Thorn Springs on June 18, 1998 (the June 18th agreement). Moss, who was not involved in any of the negotiations, testified that even he did not understand some of the language included in the June 18th agreement; he had included the terms Glen had provided to him. The court and counsel for all parties agreed that the May 7th proposal and the June 18th agreement differed from each other.

Prior to signing the June 18th agreement, Deryl reviewed the survey, dated May 28, 1998, which showed three five-acre parcels. Parcel 2 substantially matched the sketch he had sent to Glen and represented the homestead upon which Deryl had lived for fifteen years. The plotting of only three parcels made sense since Glen had told Deryl the Tabors did not want a parcel. Deryl had also personally seen surveyed the area that was to be his five acres, and it matched what he had considered his for the previous fifteen years. The mortgage papers had not included Parcel 2, so Deryl understood that to mean the property was his. Believing that Glen had relayed his demands to the other siblings, and that he was being given his parcel, Deryl signed the June 18th agreement.

On September 29, 1998, Thorn Springs filed a complaint seeking the ejection of Deryl from the property. Deryl refused to leave, claiming the oral agreement between him and Glen had modified the June 18th agreement. The alleged modification allowed Deryl to keep his five acres in exchange for his signature on the June 18th agreement. Deryl also filed a counterclaim against the shareholders of Thorn Springs and a third party complaint against the Tabors, Rosemary, Dan, and Dan's wife, Lori Miller, alleging that they interfered with his prospective economic advantage by thwarting his negotiations with the Thompsons.

On April 26, 1999, Deryl filed a motion in limine requesting that Thorn Springs not be

allowed to introduce evidence of his alleged "bad conduct." In a minute entry dated April 30, 1998, the court granted Deryl's requests that information relating to anyone's personal finances, Deryl's alleged drug use, and Deryl's alleged embezzlement of pasture leases not be allowed during the trial; the court reserved ruling on Deryl's other requests until trial.

The case went to trial in May of 1999 on combined questions of law and equity. The advisory jury returned a special verdict on Deryl's prospective interference with economic advantage, and returned an advisory verdict as to all other issues.

On May 7, 1999, the district court entered judgment on the special verdict. The court agreed with the jury that Thorn Springs and individual third-party defendants did interfere with Deryl's prospective economic advantage; however, the interference was not done for an improper purpose, and Deryl was awarded no monetary damages.

On December 3, 1999, the district court issued its memorandum decision, findings of fact and conclusions of law, and judgment. The court found that Thorn Springs was estopped from enforcing the June 18th agreement. The court held that an oral agreement between Deryl and Glen had modified the terms of the May 7th proposal, providing that Deryl would receive his five-acre parcel in exchange for his signature on the June 18th agreement. Further, the court found that the Statute of Frauds did not preclude the oral agreement because Deryl had partially performed by signing the June 18th agreement. The court noted that because the negotiations occurred between Glen and Deryl only, the case turned on the credibility of the two men. The court noted that the jury and the court believed Deryl. The court found that Glen's testimony demonstrated that he had selfish motives during his negotiations with Deryl, and that Deryl lacked any means to ascertain the truth because he was told not to speak with Thorn Springs' shareholders. The court also found that the various documents executed in May of 1998 did not merge into the June 18th agreement. The court granted Deryl the remedy of specific performance, awarding him his five-acre parcel.

On December 10, 1999, Thorn Springs filed a motion to reconsider. On September 27, 2000, the district court entered its memorandum decision denying plaintiff's motion for reconsideration. The court found that Deryl had met his burden of clear and convincing evidence regarding his specific performance claim. It held that the oral agreement did represent a meeting of the minds between Thorn Springs and Deryl, and that Deryl's sketch sufficiently described the five acres in dispute. The court reiterated that the case hinged on the credibility of Glen and Deryl; the court and jury did not believe Glen's version of the events surrounding the sale. The court also ruled that Deryl's alleged bad acts were not relevant to the cause of action and were properly excluded. Finally, the court denied attorney fees to Deryl.

Thorn Springs also filed a request for attorney fees. In its order regarding award of costs dated November 3, 2000, the court declined to award the individual third-party defendants their attorney fees. The district court found that the amount of time spent defending Deryl's claim of prospective interference with economic advantage was very small and minor in light of the entire course of the litigation. The appellants then filed this timely appeal.

## II.

### STANDARD OF REVIEW

Rule 52(a) of the Idaho Rules of Civil Procedure (I.R.C.P.) provides in relevant part:

In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment.... Findings of fact shall not be set aside unless clearly erroneous. In the application of this principle regard shall be given to the special opportunity of the trial court to judge the credibility of those witnesses who appear personally before it.

"Findings of fact cannot be set aside on appeal unless they are clearly erroneous, i.e. not supported by substantial, competent evi-

dence." *Beard v. George,* 135 Idaho 685, 687, 23 P.3d 147, 149 (2001) (citation omitted). "The district court's findings and conclusions that are based on substantial yet conflicting evidence will not be disturbed on appeal." *Id.* (citing *Sun Valley Shamrock Res., Inc. v. Travelers Leasing Corp.,* 118 Idaho 116, 118, 794 P.2d 1389, 1391 (1990)). It is the province of the district court to weigh conflicting evidence and testimony and to judge the credibility of the witnesses, therefore that "court's findings of fact will be liberally construed in favor of the judgment entered." *Id.*

### III.

### ANALYSIS

**A. The District Court's Decree Of Specific Performance Is Supported By Clear And Convincing Evidence.**

 The appellants argue that there is not substantial evidence in the record to support the district court's findings of fact. They claim that several of the court's findings are not supported when viewed in light of the dates on which the conversations occurred and when the survey was completed. They contend that this case lacked the clear and convincing evidence required to establish an enforceable oral contract.

The appellants state that to establish an enforceable oral agreement, the terms must be complete, definite, and certain at the time the agreement was formed. Appellants contend that the evidence in the record does not establish that complete or definite terms existed. Appellants argue that, excluding the sketch Deryl drew, there is nothing in either the May 25th telephone conversation or the May 21st letter that gives the legal description of the five acres. According to the map, only a creek and a roadway are used to define the property, and appellants argue that such monuments are insufficient to establish the property to which Deryl is referring.

Furthermore, appellants contend that Deryl's attempt "to 'boot strap' his inadequate map by relying on the survey which was not completed or delivered to the parties until sometime after the May 25th conversation"

must fail. They claim that Deryl cannot use, in an attempt to justify the agreement, a survey that did not exist at the time the alleged oral agreement was formed. Appellants also point out that there is a significant discrepancy between the map and the survey, which affects the size and description of the parcel.

Finally, appellants contend that the district court erred by overruling the advisory jury's finding that Deryl had the means to ascertain the truth regarding the sale. Appellants believe Deryl could have spoken with Tom Moss, the attorney who represented the corporation and drafted all of the closing documents, or had his own counsel determine the scope of the agreement. They stress that Deryl had the closing documents several days before the closing and that the absence of a deed for a five-acre parcel was obvious.

 To show a complete, definite, and certain oral contract, the material terms must identify the parties, the subject matter, the price, and a reasonably clear property description. *Wing v. Munns,* 123 Idaho 463, 463, 849 P.2d 924, 924 (1993). "A greater degree of certainty is required to sustain a decree for specific performance than is required to sustain a judgment for damages at law." *Anderson v. Whipple,* 71 Idaho 112, 124, 227 P.2d 351, 358 (1951). Idaho Code section 9–503 prevents oral contracts for the sale of land. However, an exception to the Statute of Frauds applies if a party can prove the existence of an enforceable contract with clear and convincing evidence of part performance. *Tew v. Manwaring,* 94 Idaho 50, 52, 480 P.2d 896, 898 (1971).

 "In construing a deed, physical features existing upon the ground and referred to in the description must be considered." *Sun Valley Shamrock Res., Inc.,* 118 Idaho at 119, 794 P.2d at 1392 (citation omitted). "Monuments, natural or artificial, or lines marked on ground, control over calls for courses and distances." *Id.* (citation omitted). "A fixed monument or marker is controlling over a conflicting call to course and distance, if it is of a permanent nature, and established with reasonable certainty." *Id.* (citations omitted). "[T]he determination of what is a

'monument' is generally made on a case-by-case basis." *Id.*

Both sides acknowledge there is conflicting evidence in the record. However, there is clear and convincing evidence that supports the district court's decision. The court noted that this case turned on the credibility of Deryl and Glen, and that the court and jury believed Deryl. The evidence establishes that the five siblings were always told they would receive a five-acre parcel from the ranch. The record is replete with testimony that Deryl demanded either his five acres or $60,000, and that he would not have signed the June 18th agreement without his demand being met. Glen and Deryl had many conversations and exchanged correspondence regarding the proposed sale. Deryl's part performance was the result of the totality of the circumstances surrounding the proposed sale.

The basic facts of the case support the district court's findings. Deryl and Glen negotiated a proposed sale that was embodied in the May 7th proposal. By its own terms, the May 7th proposal was null and void if not signed in forty-eight hours. Deryl did not sign it until May 15th, but both men continued negotiating the terms of the May 7th proposal. The "drop dead" letter, combined with the two telephone calls between them, showed that there were further negotiations happening. Deryl reasonably relied on Glen to convey his demands to the other shareholders. Following his demand of his five acres or $60,000, which was accompanied by a detailed sketch of the property, Deryl viewed the stakes in the ground around his property. Deryl did not base the oral agreement on the survey; instead, he used it to confirm that Parcel 2, which matched the description in his sketch, was plotted. Since the survey matched his sketch, he reasonably determined that Glen had received approval from the other shareholders to have the surveyors plot Deryl's five acres. Following the review of the survey, Deryl examined the mortgage papers and saw that Parcel 2 was not included in the mortgage. Again, that comported with the terms of the oral agreement. Deryl was unaware that the Tabors secretly wanted Deryl's parcel for themselves; in fact, Glen had told Deryl that the Tabors did not want five acres in order to avoid paying taxes on property they were not using. Taking all of the above evidence into account, the district court's decision that Deryl was entitled to his five-acre parcel is supported by clear and convincing evidence.

The appellants' argument that Deryl's sketch did not fulfill the clarity requirement is not persuasive. No one disputed that Deryl's sketch was not quite five acres and that the surveyors had to force the parcel in one direction to achieve a five-acre parcel. However, the farm had been in the family for at least two generations, and Deryl had lived in the homestead for the previous fifteen years. His sketch used natural monuments such as trees, as well as structures like the shop, the home, and a trailer home to plot out his parcel. His sketch matches Parcel 2 on the survey, except for the small forced portion. Appellants' position that they have no idea what part of the ranch Deryl is referring to is without merit. All of the parties involved knew the exact location of Deryl's property and knew he wished to keep those particular five acres.

The jury determined that Deryl was the more credible witness. The court, in the position to weigh the witnesses' credibility, agreed. Deryl was allowed to negotiate with Glen only, and was specifically told not to speak with the others about the proposed sale. Appellants' argument that Deryl could have consulted with opposing counsel to learn the truth regarding the sale is disingenuous. Deryl trusted Glen and dealt with him only as he was instructed. Based on the information Deryl had available to him, coupled with the misrepresentations made by Glen, the district court's finding that an oral agreement existed was based on sound evidence.

The district court properly applied the case law to the facts of this case. There is evidence in the record to provide clear and convincing proof that an oral agreement existed between Glen, serving as Thorn Springs' negotiator, and Deryl. We affirm the district court's decision.

## B. The District Court Did Not Err By Excluding Evidence Of Deryl's "Bad Conduct."

■ The appellants contend that the district court erred by not considering evidence of Deryl's alleged "bad conduct" and by excluding such evidence from the jury's consideration. The appellants believe that because the jury was only advisory, and because the court has the capacity to set aside the prejudicial effect of such evidence in its deliberations, and to weigh the evidence in light of the reason for which it was offered, the evidence should have been allowed.

Appellants argue that Deryl's credibility could not be attacked without the admission of evidence of his "bad conduct." They believe that the evidence of his alleged drug use and the number of people frequenting Thorn Springs at all hours, coupled with the fact that the local police had processed numerous complaints stemming from activity on the property, were relevant to Deryl's credibility. The appellants feel that such evidence illustrated why the siblings wanted Deryl off the ranch and why Glen would have never agreed to a reservation of five acres for Deryl.

The appellants further contend that evidence of Deryl's alleged willingness to obtain a forged signature on documents pertinent to this case is important because it reflects negatively on his credibility, and because it shows that he had the ability to understand and manipulate the property conveyance system. The appellants believe this showed that Deryl likely fully appreciated the transaction whereby he sold his interest in Thorn Springs and did not reserve five acres for himself.

"Under Rule 404(b), evidence of uncharged misconduct is generally inadmissible when offered as evidence of the defendant's bad character." *State v. Eytchison*, 136 Idaho 210, 215, 30 P.3d 988, 993 (Ct.App.2001) (citations omitted). "Such evidence may be admissible when introduced for other purposes such as proof of motive, intent, plan, knowledge, and identity." *Id.* "Even if relevant to a permissible purpose, evidence of uncharged misconduct is subject to exclusion under I.R.E. 403 if its probative value is substantially outweighed by the danger of unfair prejudice." *Id.* (citations omitted). "The determination of whether the risk of unfair prejudice substantially outweighs the probative value of the evidence is within the discretion of the trial court." *Id.* (citing *State v. Porter*, 130 Idaho 772, 784, 948 P.2d 127, 139 (1997)).

In the present case, there was ample testimony that the siblings and their spouses wanted Deryl off the property. The district court properly found that Deryl's alleged drug use as the impetus behind the siblings and their spouses wanting him off the ranch was not relevant to the cause of action. Furthermore, the probative value of such evidence was substantially outweighed by the unfair prejudice that would have resulted. The appellants were not deprived of the opportunity to offer testimony that they wanted Deryl off the property to support their claim that they would have never offered Deryl a five-acre parcel—why they wanted him off the property was not relevant to determining the property's location and owner. This Court affirms the district court's decision to exclude evidence of Deryl's alleged "bad conduct," as it was a proper exercise of the court's discretion.

"I.R.E. 103(a)(2) provides that a party can only assert error on the part of the trial court in excluding evidence where the party made an offer of proof at trial describing the substance of the evidence sought to be admitted." *Morris ex rel. Morris v. Thomson*, 130 Idaho 138, 143, 937 P.2d 1212, 1217 (1997). There is no evidence in the appellate record regarding the alleged attempt by Deryl to obtain a forged signature; the record does not contain an offer of proof by the appellants on this evidence. As such, appellants are not allowed to rely on it on appeal and this Court will not address it. *See Gen. Auto Parts Co., Inc. v. Genuine Parts Co.*, 132 Idaho 849, 855, 979 P.2d 1207, 1213 (1999).

## C. The District Court Did Not Err By Declining To Award Attorney Fees To The Smiths And The Tabors On Deryl's Third-Party Complaint.

■ The appellants state that I.C. § 12–121 provides district courts with the discre-

tionary power to award attorney fees in cases that were brought or pursued frivolously, unreasonably, or without foundation. The appellants argue that Deryl's third-party complaint required Lori Miller, Dan Smith, and Bernadine and Glen Tabor to obtain counsel to defend themselves against his complaint. The appellants contend that little or no testimony pertaining to the claim of interference with prospective economic advantage was elicited from these witnesses, thereby justifying an award of attorney fees below.

This Court affirms the district court's denial of attorney fees to the appellants. This Court addressed the same issue recently in *Nampa & Meridian Irr. Dist. v. Washington Fed. Sav.*, 135 Idaho 518, 524, 20 P.3d 702, 708 (2001). In that case, Washington Federal asserted that the district court improperly denied its request for attorney fees pursuant to I.C. § 12–121 because NMID pursued its claim frivolously. This Court held that an award of attorney fees pursuant to I.C. § 12–121 was not a matter of right, and was appropriate only when the district court, in its discretion, believes the action was pursued or brought frivolously or without foundation. "When deciding whether the case was brought or defended frivolously, unreasonably, or without foundation, the entire course of the litigation must be taken into account." *Id.*

The award of attorney fees rests in the discretion of the district court, and the burden is on the person disputing the award to show an abuse of discretion. *Id.* at 525, 20 P.3d at 709 (citing *Anderson v. Ethington*, 103 Idaho 658, 651 P.2d 923 (1982)). This Court uses a three-part test when reviewing whether a court abused its discretion. This Court determines "(1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason." *Sun Valley Shopping Ctr. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991) (quoting *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989)).

In *Nampa & Meridian Irr. Dist.*, this Court found that the district court had properly exercised discretion in declining to award attorney fees to Washington Federal. In the present case, the district court did not abuse its discretion by denying an award of attorney fees to the appellants below. The district court first denied attorney fees to Deryl, even though Deryl was the prevailing party in the main cause of action. The court also denied the appellants' claim for attorney fees, even though they had prevailed on Deryl's claim of interference with economic advantage. The district court demonstrated that it exercised discretion because it took into consideration the amount of time the appellants had expended on the tort claim in comparison to the entire course of the litigation and found that the tort claim was but a minor part of the litigation. The district court's decision is affirmed.

**D. The Respondent Is Not Entitled To Attorney Fees On Appeal Pursuant To I.C. § 12–121.**

Deryl asserts that appellants' appeal is brought frivolously, unreasonably, and without foundation because they merely dispute the district court's factual findings by pointing to conflicts in the evidence. Deryl requests attorney fees on appeal pursuant to I.A.R. 35(b)(5), 41, and I.C. § 12–121. Deryl relies on *Krebs v. Krebs*, 114 Idaho 571, 759 P.2d 77 (1988), to support his position. In *Krebs*, this Court awarded attorney fees on appeal because the appellants did not present any meaningful issues on questions of law. Deryl contends that Thorn Springs does not point to any clear error on the part of the district court, but simply second-guesses its factual findings, and fails to present meaningful issues on questions of law.

An award of attorney fees pursuant to I.C. § 12–121 is proper only when the case was brought frivolously, unreasonably, or without foundation. *Northwest Bec–Corp. v. Home Living Serv.*, 136 Idaho 835, 842, 41 P.3d 263, 270 (2002) (citing *Kelly v. Silverwood Estates*, 127 Idaho 624, 630, 903 P.2d 1321, 1327 (1995)). In the present case, this Court is

not left with the abiding belief that this appeal was brought frivolously, unreasonably, or without foundation. Therefore, no attorney fees on appeal are awarded.

## IV.

## CONCLUSION

The record contains clear and convincing evidence that an oral agreement existed between Glen and Deryl that provided Deryl with his five-acre parcel in exchange for his signature on the June 18th agreement. The evidence of Deryl's "bad conduct" was properly excluded. The district court did not abuse its discretion in denying attorney fees to the individual appellants. We affirm the district court's decision. No attorney fees on appeal are awarded. Costs to respondent.

Chief Justice TROUT, Justices SCHROEDER, and WALTERS CONCUR. Justice EISMANN filed a concurring opinion.

Justice EISMANN, concurring:

I concur in the majority opinion, but write only to mention that appellants did not raise on appeal the following issues: (a) whether evidence of the alleged oral agreement to convey real property was barred by the parol evidence rule; (b) whether such oral agreement was within the Statute of Frauds; (c) whether signing the June 18th agreement could constitute part performance of an earlier oral agreement to convey real property; (d) whether equitable estoppel could even apply under the facts in this case. Therefore, this opinion should not be read as expressing any opinion on those issues.